## COUNTY OF KAUAI *v.* W. C. McGONAGLE, TREASURER OF THE TERRITORY OF HAWAII.

### No. 2282.

ARGUED JUNE 25, 1936.          DECIDED AUGUST 7, 1936.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY PETERS, J.

Under the provisions of Act 40, 2d Sp. S. L. 1932, as amended, hereinafter referred to as the "1932 Real Property Tax Act," all real property in the Territory is subject to an annual *ad valorem* tax at a rate to be computed by the territorial treasurer. The method of determining the rate is prescribed by section 21 of the Act as amended (R. L. 1935, § 1921, Am. L. 1935, Act 191, § 1).

The Kauai county budget for the calendar year 1936, as submitted to the territorial treasurer on February 19 of that year, disclosed that in computing the amount to be included under column II opposite item (9) under column I, the county supervisors had included the sum of $56,-

188.79, representing the 1935 surplus fuel tax collections payable to Kauai county under the provisions of section 12, paragraph (3) of the Hawaiian Fuel Tax Act (Act 19, 1st Sp. S. L. 1932), as amended by Act 6, Sp. S. L. 1933, hereinafter referred to as the "Fuel Tax Act," as revenues or funds "available" during the year 1936 and applicable in column II on account of item (9) under column I.

The Fuel Tax Act imposes a tax on liquid fuel used in internal combustion engines for the generation of power. Liquid fuel taxes are territorial realizations. The disposition of taxes collected under the Fuel Tax Act is prescribed in section 12 thereof as amended. To fully appreciate the language of section 12 as originally enacted and subsequently amended the session laws should be consulted. Section 2021, R. L. 1935, which purports to be section 12 of the Act as amended, is a modified form and there have been mistakenly omitted therefrom portions of the section as originally enacted.

The territorial treasurer declined to accept the budget in the form submitted by the supervisors of Kauai county, insisting that the amount of surplus 1935 fuel tax collections payable to the county was not one of the amounts which were required or authorized by law to be deducted from or offset by the county board of supervisors against the tax rate calculations for the calendar year 1936 for item (9) or represented revenues or other funds available during such year on account of item (9) and should be omitted by the board from its computations of the amount that should be included under column II opposite item (9) under column I; that the territorial treasurer, and not the county board of supervisors, was authorized by section 12, paragraph (3) of the Fuel Tax Act to make the deduction of the 1935 surplus fuel tax collections and that before accepting the budget as submitted it would be necessary that the same be amended by the board of supervisors accordingly.

At first blush it would seem that the territorial treasurer was insisting upon a distinction without a difference; that it is as broad as it is long if the county supervisors, in preparing the 1936 budget, deducted the amount of 1935 surplus fuel tax collections as a part of the amount included in column II opposite item (9) under column I, or the territorial treasurer deducted such surplus. But the difference results from the limitation of $450,000 placed by section 21 of the 1932 Real Property Tax Act on the amount that may be shown in item (11) column III of the Kauai county budget. To be exact. In the 1936 budget of Kauai county the amount shown in item (11) column III of the budget is the sum of $423,115.71. If the amount of the 1935 surplus fuel tax collections is not deductible from or otherwise available for item (9) under column II, the amount that should be shown in said item (11) column III of its budget is the sum of $479,265.50, an excess of $29,265.50 over the legally permitted maximum amount.

The county supervisors refused to amend the budget and no other budget has been transmitted by them to the territorial treasurer within the time required by law.

In the meantime Kauai county brought proceedings for a declaratory judgment. The parties thereto filed a stipulation of facts and the questions involved under the record were, pursuant to the statute, reserved by the presiding judge for the consideration of this court. In the stipulation referred to it is therein mutually agreed between the parties that the facts do not require the application of paragraph (3) of section 71 of the 1932 Real Property Tax Act. It is a fair inference from the admitted facts that none of the 1935 surplus fuel tax collections were included in the 1934 estimates of fuel taxes available for that year for the purposes of paragraphs (2) or (3) of section 12 of the Fuel Tax Act.

No objection was made by the attorney general to the

jurisdiction of the circuit court to consider the controversy under the declaratory judgment statute. And we, for reasons of expediency, make none. But in proceeding to the merits it should be understood that this case is not to be considered as a precedent.

The many questions reserved will not be repeated here. They are involved and repetitious. Some are beyond the scope of the briefs. Our categorical answers at the conclusion of the opinion will indicate what questions have been considered. Those not answered are returned unanswered. Such of the questions as have been considered logically resolve themselves into the two following questions: 1. Are the two Acts, namely, the Hawaiian Fuel Tax Act (1st Sp. S. L. 1932, Act 19), as amended, and the 1932 Real Property Tax Act (2d Sp. S. L. 1932, Act 40), as amended, in respect to the application of surplus fuel tax collections, repugnant to or in conflict with each other, so that it may be said that the 1932 Real Property Tax Act, being the latest expression of the legislative will, will although it contains no repealing clause in respect thereto, govern, control or prevail so as to supersede and impliedly repeal the provisions of the earlier Act which imposes the duty upon the territorial treasurer, where surplus collections for any year in any fuel tax fund to the credit of a county remain after the payment of the charges enumerated in paragraphs (1), (2) (a), (2) (b) and (2) (c) of section 12 of the Fuel Tax Act, to deduct such surplus fuel tax collections from the tax rate calculations for the succeeding calendar year for property taxes in the county concerned, and to transfer such duty to the county board of supervisors of the county affected and to authorize them to include under column II of the budget, opposite the appropriate item under column I, the amount of such surplus fuel tax collections; and, if not, 2. Does the provision of section 21 of the Real Property Tax Act providing for the contingency of a failure by

a county board of supervisors to transmit a budget, as in said section 21 required, apply?

Petitioner takes the position that the county board of supervisors, and not the territorial treasurer, is the proper governmental authority to make the deduction of surplus liquid fuel tax collections and such deductions must be made in item (9) under column II of the 1936 county budget and any provision to the contrary in the Liquid Fuel Tax Act was repealed by implication by the provisions of the 1932 Real Property Tax Act.

The petitioner does not deny that the Liquid Fuel Tax Act expressly provides that the territorial treasurer shall deduct surplus fuel tax collections from the property tax rate calculations but claims in support of its position that the Liquid Fuel Tax Act was enacted by the legislature during the existence of the former Real and Personal Property Tax Act (R. L. 1925, §§ 1315-1323, both inclusive, as amended), which the 1932 Real Property Tax Act superseded and expressly repealed and that when the legislature passed the real property tax law it effected such a radical change or departure from the policy and practice of real property taxation contemplated by, and enacted provisions so inconsistent with, section 12 of the Fuel Tax Act, especially in section 21 of the 1932 Real Property Tax Act, as to supersede or repeal those portions of section 12 of the Fuel Tax Act which required the treasurer to make deductions of surplus fuel tax collections and to require the board of supervisors of each county to make the required deductions in their budgets before submitting the same to the territorial treasurer.

Petitioner points to the history of tax legislation introduced in the first and second special sessions of the 1932 legislature and especially to that of the Fuel Tax Act and the 1932 Real Property Tax Act, as commonly known and as disclosed by the senate and house journals of that session; to the respective subjects of the Fuel Tax

Act and the 1932 Real Property Tax Act; to the respective objects and purposes to be accomplished and subserved by each and to contemporaneous legislation upon allied subjects affected by the provisions of section 21 of the 1932 Real Property Tax Act (2d Sp. S. L. 1932, Acts 55, 65, 62, 57, 64), as indicating a general legislative intention, and to the specific provisions of the Real Property Tax Act and especially sections 21 and 71 thereof, as indicating a specific legislative intention to repeal the provisions of the Fuel Tax Act in respect to the duties of the treasurer of deducting surplus fuel tax collections from the tax rate calculations for the succeeding calendar year for property taxes in the county concerned.

The intention of the legislature is to be obtained primarily from the language used in the statute. (*In re Inter-Island Steam Nav. Co.*, 21 Haw. 6.) Where the language of the statute is plain and unambiguous there is no occasion for construction and the statute must be given effect according to its plain and obvious meaning. But where the language used is of a doubtful meaning or adherence to the strict letter of the statute would lead, as petitioner claims it leads, to contradictory provisions, the court may resort to the material to which petitioner points to ascertain the true meaning of the language employed. But the language used in the Fuel Tax Act and in the 1932 Real Property Tax Act is not of doubtful meaning. On the contrary it is plain and unambiguous. Nor do any of their terms appear to be contradictory of or repugnant to each other except in the one instance hereinafter adverted to of the inclusion in the prescribed form of budget in column II opposite item (2) of the words "liquid fuel taxes" which at first blush would seem to be contradictory of subparagraph (2) of paragraph (3) of section 12 of the Fuel Tax Act but of the propriety of the presence of which in the prescribed form of budget, we express no opinion. On the contrary they are in perfect harmony.

We shall consider the extrinsic matters to which petitioner points, confining ourselves however to the facts as set forth in the stipulation. This serves to eliminate all references to the senate and house journals of the first and second special sessions of the 1932 legislature. We shall not undertake to set forth in detail or consider separately the several instances in which the petitioner maintains a general or specific legislative intention appears to repeal the provisions of the Fuel Tax Act in question, contenting ourselves with the consideration of those which we deem worthy of notice as we progress.

First as to the alleged general legislative intention to repeal. At the time of the passage of the liquid fuel tax law (approved March 29, 1932, effective midnight on March 31, 1932), there existed a varied assortment of territorial taxes including real and personal property taxes, specific taxes, income taxes and inheritance taxes. All were territorial realizations. Of these, the only sources of county revenues were personal taxes (R. L. 1925, §§ 1301-1304, as amended), and real and personal property taxes (Id. §§ 1315-1323, as amended). The administration of the laws imposing these taxes including their collection and disposition was delegated exclusively to territorial officers and the distribution of all taxes collected by the Territory and payable to the counties was made to the latter by the territorial treasurer.

Real and personal property taxes under the then existing real and personal property tax law were imposed for various purposes identified by item number and subject matter. (See R. L. 1925, § 1315, as finally amended by L. 1931, Act 183, § 1, prior to repeal by section 71 of the 1932 Real Property Tax Act.)

To determine the annual rate at which real and personal property should be taxed each year, it was required by section 1315, R. L. 1925, as amended, that the territorial treasurer prepare a budget, much the same as is

now required of the board of supervisors under the 1932 real property tax law but to each divisional assessor, with certain limitations, was delegated the authority, with the approval of the territorial treasurer for his own taxation division, to estimate the rate per centum at which the property in such taxation division subject to be taxed should be taxed in order to yield during the year the total amount required under the items referred to. In all instances where there were amounts deductible from or otherwise available for the respective items it was expressly provided that the deductions be made by the territorial treasurer. All the real and personal property taxes collected were paid into the territorial treasury as the treasurer might direct.

The disposition of personal taxes and real and personal taxes payable to the counties and the uses and purposes to which they were committed were prescribed by section 1380, R. L. 1925, as amended (see R. L. 1925, § 1380, Am. L. 1925, Act 192, § 17; L. 1929, Act 223, § 1 and L. 1931, Act 174, §§ 1, 2, prior to repeal by § 71 of the 1932 Real Property Tax Act). All personal taxes paid into the territorial treasury from each county, with certain exceptions, were payable to the respective county treasurers of the counties within which the same were collected and were expendable only in making, maintaining and repairing public roads as authorized by the respective boards of supervisors. Out of the real and personal property taxes, other than those specified in the proviso of section 1315 as amended, as being for the sole benefit of the Territory, the treasurer was required to retain sufficient for the payment of certain items enumerated in section 1315, as amended, and also for the purposes specified in any legislative act or acts providing for funds to be raised by property taxes for the benefit of the Territory or for territorial purposes, and pay the balance to the county treasurer for the purposes of the remaining items of said section as amended.

The primary object of the Fuel Tax Act was to relieve the existing tax burden upon real and personal property. It was apparently for that reason that in the Fuel Tax Act, by section 12 thereof, it was provided that the taxes collected be devoted to purposes included within the purposes of the then existing real and personal property tax law. A secondary purpose is also apparent. The provisions of section 12 of the Act also indicate that it was the intention of the legislature to not alone relieve the existing burden of property taxes but in extending such relief to devote fuel taxes as far as possible exclusively to permanent highway construction whether thereafter incurred or existing in the form of outstanding territorial or county bonds issued for highway purposes. It was therefore to be expected that the Liquid Fuel Tax Act should contain the provision incorporated in subparagraph 1 of paragraph (3) of section 12.

This provision in respect to the determination of the tax rate for each county for the year 1932 is consistent with the then existing real and personal property tax law imposing the duty upon the territorial treasurer to prepare the real and personal property tax budgets. And the requirement that he "deduct said respective sums from the tax rate calculations for property taxes in such counties for subdivisions 4a, 4, 3 and 1 and 2, of said Section 1315," is but the adoption of similar language found in sections 1315, as amended, and 1380, as amended, in respect to amounts deductible from or otherwise available or to be paid for the respective items of the budget.

Obviously in March, 1932, when the liquid fuel tax law was passed it was impossible for the legislature to anticipate in advance whether the real and personal property tax laws would continue as then existing or if amended what form the same would take. Apparently from the language of the second subparagraph of section 12 of the Act the amendment of the existing real and personal prop-

erty tax law or its repeal and the passage of a new property law was in the wind. It was consequently impossible for the legislature at that time to make definite provisions to apply thereto further than by appropriate language to insure that liquid fuel taxes would be applied for the reduction of taxes upon real or real and personal property and be devoted primarily for highway purposes. Section 1315, R. L. 1925, as amended, contained no limitation upon the net amount of the budget. Hence it was that the legislature anticipated in subparagraph (2) of paragraph (3) of section 12 the subsequent passage of a new real property or real and personal property tax law covering the same items as paragraphs (2) and (3) of section 12 of the Fuel Tax Act.

The 1932 property tax law was passed at the second special session of the legislature on May 11, 1932, and became effective on and after July 1 of that year. By section 72 of the Act sections 1315 to 1323, R. L. 1925, both inclusive and as amended, were expressly repealed. No new personal property tax law was passed until the special session of the 1933 legislature (October-November, 1933). (See 1st Sp. S. L. 1933, Act 9.)

It will be observed from the items of the respective budgets required by section 1315, R. L. 1925, as amended, and section 21 of the 1932 Real Property Tax Act, that items 4a, 6, 7, 8 and 9 of the former were omitted from the latter, and that items 3 and 4 of the former are segregated in the latter, accordingly as the bonds referred to were issued for highway or other than highway purposes. It is also worthy of note that items (2) and (4) of the 1932 real property tax law budget correspond with the fixed charges imposed on liquid fuel taxes by paragraphs (2) (b) and (2) (c) of section 12 of the liquid fuel tax law. The omission from the 1932 real property tax law of items 4a, 6, 7, 8 and 9 of the previous real and personal property tax is consonant with the continuing inten-

tion to reduce the tax burden on real property. The inclusion of items (2) and (4) in the budget, other things being equal, would also have the effect of decreasing the tax burden on real property to the extent that fuel taxes were applied thereto.

By the passage of the 1932 real property tax law there was thereby unquestionably committed to the county boards of supervisors the preparation of the budget described in section 21 of the Act as a part of the method provided for the determination of the annual tax rate upon real property. And to the extent that in the previously existing tax law similar duties were imposed upon the territorial treasurer those duties were transferred to the respective county boards. But their functions, similarly as those of their predecessor, were by section 21 of the Act meticulously prescribed and their powers and duties limited and qualified so that it could hardly be said, except as to the amount of estimated expenditures not otherwise fixed by law, that they were anything more than mere automatous cogs in the wheels of tax rate computation.

For all items under column I, with the exception of items (5), (9) and (10), and possibly some subjects included in the item "other estimated county revenues and expenditures" the amounts were fixed by law. Under column II the funds available or estimated as available resulted by operation of law. To ascertain the amounts was simply a matter of computation,—for items (1) and (2), column I from data furnished by the territorial treasurer; for item (7) under column I data furnished by the board of trustees of the territorial employees' retirement system; for items (6) and (8) under column I the respective acts of the legislature and for items (3) and (4) column I, outstanding county bonds, etc. From the transfer, however, from the territorial treasurer to the county boards of supervisors of the powers and duties of preparing the budget it does not follow that the powers

and duties of the territorial treasurer under the Fuel Tax Act were impliedly transferred also to the county boards.

There are two separate and distinct subjects of section 21 of the 1932 Real Property Tax Act; one, the preparation of the budget by the county boards of supervisors and the other the determination of the real property tax rate by the territorial treasurer. And a strict line of demarcation is drawn between the powers and duties of the county boards of supervisors, in preparing the budget, and the powers and duties of the territorial treasurer in determining the tax rate. Immediately that the budget is prepared and formally approved the duties of the boards of supervisors end and those of the treasurer begin. When prepared and approved by resolution of the board of supervisors, adopted in the manner provided by law relating to resolutions involving the expenditures of public moneys the powers and duties of the respective boards of supervisors cease, further than to transmit the budget to the territorial treasurer and if submitted earlier than March 31, to amend the same from time to time by resolution similarly adopted and filed with the treasurer on or before that date. Thereupon it becomes the duty of the treasurer to act. To the treasurer and the treasurer alone is committed the determination of the real property tax rate and his powers and duties in respect thereto are prescribed with the same meticulous attention to detail as those of the county boards of supervisors in respect to the preparation by them of the budget. The respective tax rates for each county when determined by the territorial treasurer are communicated to the territorial tax commissioner and become the real property tax rate at which real property must be taxed for the current year in the taxation division in which is included the county affected.

Section 21 of the 1932 Real Property Tax Act furnishes the method of determining the normal real property tax rate for each county. It is silent upon the sub-

ject of surplus fuel tax collections. Section 12 of the Fuel Tax Act on the other hand provides the means for and the method of applying additional revenue by way of fuel taxes and thereby reducing the normal property tax rate for each county. The only deductions referred to in section 21 of the 1932 Real Property Tax Act are those to be made by the county supervisors in column II of the prescribed budget. The application of estimated liquid fuel taxes and surplus fuel tax collections is expressly required to be made by the treasurer from property tax rate calculations to effect a reduction in the real property tax rate. The Fuel Tax Act provides a special method for the reduction of the real property tax rate after the usual. methods of determining the normal real property tax rate have been observed. The powers and duties of the county boards of supervisors are confined to budget making. The powers and duties of the territorial treasurer are confined to real property tax rate fixing. Hence we may say that in general the powers and duties of the boards of supervisors within their sphere of action under the 1932 Real Property Tax Act and the powers and duties of the territorial treasurer within his sphere of action prescribed by the 1932 Real Property Tax Act and the Liquid Fuel Tax Act are separate and distinct, are not in conflict with or repugnant to each other and, on the contrary, are in perfect harmony and should and can synchronize without friction or interference.

To permit the boards of supervisors to deduct estimated or surplus fuel tax collections from the appropriate item in the budget would wholly thwart and defeat the plainly expressed intention of the legislature to apply fuel taxes to the reduction of the real property tax rates. The method employed in the instant case was a palpable evasion of the provision limiting the amount for which taxes on real property may be raised in Kauai county. The Territory may resort to as many means as it deems proper

to reduce the normal real property tax rate determined under the provisions of section 21 of the Real Property Tax Act. It might, and no doubt legally could, apply for the reduction of the normal real property tax rate revenue from sources other than fuel taxes. It cannot reasonably be said that simply because other sources of revenue are provided to reduce the tax rate that to the extent of such additional revenues the maximum limitation for which real property taxes may be raised may be correspondingly increased.

Nor does the contemporaneous legislation to which we have been referred by petitioner militate against our conclusion. To the contrary of showing a general intention, as contended by petitioner, of repealing the provisions of the Fuel Tax Act in respect to the application by the territorial treasurer of surplus fuel tax collections they indicate an adherence to a strict separation of the powers and duties of the county boards of supervisors in relation to the preparation of the budget from the powers and duties of the territorial treasurer to determine the real property tax rate both under the real property tax and the liquid fuel tax. It will serve no useful purpose and would unnecessarily prolong this opinion to analyze and thereby demonstrate that such contemporaneous legislation, repealing or amending existing laws, was made necessary by the budget requirements of the 1932 Real Property Tax Act, and that while in substance their legal effect was to transfer the theretofore existing budgetary powers and duties of the territorial treasurer in respect to the then existing real and personal property tax law to the county boards of supervisors, such repeals or amendments in nowise affected the powers and duties conferred and imposed upon the treasurer under either the 1932 Real Property Tax Act or under the Fuel Tax Act.

It is worthy of note that wherever the duties of the treasurer are by amendment transferred to the county

boards of supervisors, the amendment specifically provides that the deductions involved be made by the latter in the preparation of the budget. This may be emphasized by quotations from the amendatory Acts. Section 4, Act 251, L. 1927, as amended, re employees' retirement system and as further amended by section 1, Act 50, 2d Sp. S. L. 1932, provides: "The board of supervisors of each county and city and county shall include in its annual budget for the fixing of the real property tax rate for such county or city and county, the amount certified to such board by the board of trustees of said System, under this section as due from such county or city and county for such year, including in said budget proper *deductions* from or additions to said amount as hereinafter provided." (Italics ours.) Again, Act 106, L. 1931, as amended, re Kauai county bonds, as further amended by section 1, Act 55, 2d Sp. S. L. 1932, provides: "Principal and interest charges; how paid. All amounts necessary to meet interest and payments of principal when due of such of said bonds as are issued for the construction, extension and/or improvement of water works shall be paid from the proceeds of sales of water and service charges in connection with water works in said county (and the *board of supervisors* shall, in the *budget* submitted for any calendar year for the purpose of fixing the tax rate for such year, *deduct* from its estimates of requirements for county bonds for other than highway purposes the amounts hereby required to be paid out of water revenues), and all such amounts," etc. (Italics ours.) Act 78, L. 1925, as amended by section 9, Act 53, L. 1929, re Federal aid for highways, as further amended by section 1, Act 64, L. 1932, provides: "The board of supervisors of each county shall include, in its budget for such year, under the item designated as 'other county items fixed by law', submitted by it to the territorial treasurer for the purpose of fixing the real property tax rate for such year,

the total amount of the estimate so submitted to it by the territorial highway engineer for such year, *offsetting against the same, in such budget, the amount of other funds* (if any) by said board estimated to be available for and intended to be applied on account of said total amount due from the county." (Italics ours.)

Nor do any of the specific provisions of section 21 of the 1932 Real Property Tax Act as originally passed or as subsequently amended evince any specific legislative intention to repeal the express provisions of section 12 of the Fuel Tax Act imposing upon the treasurer the duty of deducting surplus fuel tax collections from the real property tax rate calculations for the succeeding year. A paragraph of section 21 of the Fuel Tax Act specifically provides what shall be included in column II of the budget. From the language employed it is apparent that the amounts to be included in column II of the budget are those expressly required or authorized by law to be deducted by the county supervisors in the preparation of their budgets and not those expressly authorized by law to be deducted by the territorial treasurer from the tax rate calculations. The powers and duties of the county boards of supervisors in respect to the preparation of their budgets are respectively conferred and imposed by section 21. The amounts to be included in column II opposite each item under column I are offsets against the "tax rate calculations" "for such item." Surplus fuel tax collections are required under section 12 of the Fuel Tax Act to be deducted by the treasurer "from the tax rate calculations for the succeeding calendar year for property taxes" which under the provisions of section 21 of the Real Property Tax Act are the tax rate calculations employed by the treasurer for the determination of the normal real property tax rate. "Permanent improvements," as defined by the Real Property Tax Act include in part only the "permanent improvements" for which surplus

fuel tax collections may be deducted or expended. The inclusion of the county board of supervisors in column II opposite item (9) in column I did not legally constitute a deduction contemplated by section 12, paragraph (3) of the Fuel Tax Act. We find no conflict between the specific provisions of section 21 of the Real Property Tax Act and the specific provisions of section 12 of the Fuel Tax Act in respect to the application of surplus fuel tax collections. They, similarly as the two Acts in general, are in all respects consistent and the powers and duties thereby respectively conferred may and should be exercised by the respective officers involved harmoniously and without any friction or interference.

The petitioner points to the presence in the prescribed form of budget of the words "liquid fuel taxes" in column II opposite item (2) of column I and argues therefrom that the county board of supervisors having been thereby authorized to deduct liquid fuel taxes in column II opposite item (2) of column I by analogy they were impliedly authorized to deduct surplus fuel taxes in column II opposite item (9) of column I. But this does not necessarily follow. Since the year 1932 under the provisions of section 12 of the Fuel Tax Act two types of fuel taxes are deductible by the territorial treasurer from the real property tax rate calculations to reduce the real property tax rates: One, estimated fuel taxes; the other, surplus fuel tax collections. Estimated fuel taxes represent estimated collections for the current year. Surplus fuel tax collections represent fuel taxes collected during the previous year and remaining after the purposes of paragraphs (1), (2) (a), (2) (b) and (2) (c) of section 12 have been discharged. Estimated available fuel taxes as collected are allocated for the purposes prescribed and in the order of their priority and are held and used by the treasurer or paid by him to the county treasurers accordingly as it is the former's or the latters' legal duty to allocate or pay.

But while estimated current taxes include estimates for the purposes provided in paragraphs (2) and (3) of section 12 and may include an estimated surplus, surplus fuel tax collections are actual fuel tax collections which have, at the end of the current year, become surplus fuel tax collections deductible from the tax rate calculations for the succeeding year. These surplus fuel tax collections are only deductible from the tax rate calculations for permanent improvements and not for any of the purposes of paragraphs (2) (a), (2) (b) or (2) (c) of section 12 which includes items (2) and (4) of the budget. The inclusion of the words "liquid fuel taxes" in column II opposite item (2) of column I refer to current estimated available fuel taxes with which we are not concerned. The issues involve only the deduction of the surplus fuel tax collections which can only be deducted for and must be expended upon permanent improvements as defined in paragraph (3) of section 12. And if petitioner's theory were pursued to its logical conclusion the words "liquid fuel taxes" should also appear in column II opposite item (9) of column I of the budget, which they do not. It may be said that the words "liquid fuel taxes" appearing in column II opposite item (2) under column I of the budget may be wholly disregarded as inadvertently employed and out of harmony with the express provisions of both the Real Property Tax Act and the Fuel Tax Act; that they should be treated as surplusage in view of the language of the second subparagraph of paragraph (3) of section 12 of the Fuel Tax Act and that the provision that the treasurer make deductions of estimated available taxes thereby reducing the real property tax rate "any other provision of law to the contrary notwithstanding," is controlling but as to this we pass no opinion. At all events the presence of those words in the budget is not sufficient to overcome the express direction of section 12, paragraph

(3), of the Fuel Tax Act that the treasurer deduct surplus fuel tax collections.

Nor do we deem it necessary to decide to what item or items of the budget the words "tax rate calculations" contained in section 12, paragraph (3) of the Fuel Tax Act ordinarily refer. Suffice it to say that in the instant case the board of supervisors of Kauai county, having failed within the time required by law to submit to the treasurer of the Territory a budget as required in section 21 of the 1932 Real Property Tax Act, the question has become moot and the treasurer is obliged under the statute to adopt as a basis for fixing the tax rate for that county a figure equal to ten per cent less than the amount fixed by statute as the tax rate limit for such county. When such figure has been adopted by him as a basis for fixing the tax rate for Kauai county, that figure then becomes the "tax rate calculations" of Kauai county for the calendar year 1936, for real property taxes therein, and it will then be incumbent upon the treasurer to deduct therefrom the 1935 surplus fuel tax collections in the admitted amount.

Of the questions reserved 3a, 2a and 2b are answered in the negative; 3b, 4b and 2c in the affirmative. The remainder are returned unanswered.

*C. N. Tavares* and *A. G. Kaulukou* (*A. G. Kaulukou* and *Hewitt & Tavares* on the briefs) for petitioner.

*G. P. Kimball,* Second Deputy Attorney General (*W. B. Pittman,* Attorney General, and *J. V. Hodgson,* First Deputy Attorney General, on the brief), for respondent.