## Commonwealth v. Bell Telephone Company.

*Thomas J. Baldrige*, Attorney-General, and *John Robert Jones*, Deputy Attorney-General, for plaintiff.

*Beidleman & Hull*, for defendant.

WICKERSHAM, J., March 18, 1929.—By agreement of counsel this case was submitted to the court without a jury under the provisions of the Act of 1874. The learned Attorney-General and counsel for the defendant have agreed upon the following stipulation of

### Facts.

1. The Bell Telephone Company of Philadelphia is a corporation incorporated under the laws of Pennsylvania on Sept. 18, 1879, under the Act of April 29, 1874, P. L. 73, for the purpose of constructing, maintaining and operating a line or lines of telegraph, and all such other business as may be authorized by said act of assembly and its supplements relating to the use of electricity. The name of The Bell Telephone Company of Philadelphia was changed to The Bell Telephone Company of Pennsylvania on Dec. 21, 1907. The said company was engaged in the telephone business in the State of Pennsylvania during the six months' period ending June 30, 1923.

2. On Aug. 11, 1923, the above-named defendant filed in the office of the Auditor General of the Commonwealth of Pennsylvania, under the provisions of section 23 of the Act of June 1, 1889, P. L. 420, its gross receipts report for the six months' period ending June 30, 1923, wherein was reported "Gross receipts within the State from all sources, $19,796,411.84. On Aug. 22, 1923, the Auditor General made a settlement of gross receipts tax thereon, which was approved by the State Treasurer Aug. 23, 1923, imposing a gross receipts tax upon the total receipts in the amount of $19,715,050.25, with the resultant tax in the amount of $157,720.40. Subsequent thereto, resettlement of the said tax was made by the Auditor General Feb. 25, 1924, and approved by the State Treasurer Feb. 26, 1924, wherein a gross receipts tax was imposed upon the gross receipts in the amount of $19,715,049.25, with the resultant tax in the amount of $157,720.39. From this resettlement the instant appeal was taken.

3. Included within the said report was the item "From Directory Advertising, $542,834.62," and the item "From charges for material furnished and for work done by the reporting company's employees, the answer hereto including all receipts from custom work, or for installation of reporting

company's own equipment or service, $157,978.27." These two items of gross receipts, totaling $700,812.89, were included within the said amount of $19,715,049.25. To the taxation of these two items of receipts objection is made on the part of the defendant, the defendant contending that said receipts are not receipts subject to taxation under the provisions of the said section 23 of the said Act of June 1, 1889.

4. The defendant, upon Oct. 19, 1923, paid into the State Treasury the sum of $152,113.90, being the tax imposed under the provisions of section 23 of the said Act of June 1, 1889, upon the total amount of gross receipts as set forth in said report, to wit:

> From transmission and delivery of telephone or telegraph messages from points within the State to points within the State—the amount set down in answer hereto including receipts from tolls, charges for use of instruments and extensions in connection with exchange service, charges for private branch exchanges, and termination charges; and in case of mutual or rural companies, it includes all payments required of stockholders or subscribers to meet the cost of maintenance of service...........$18,742,174.09

> From removal charges............................ 42,545.50

> From charges to mutual or rural companies for exchange service............................... 57,414.37

> From rental of wires............................. 172,103.40

> Total...................................$19,014,237.36

The defendant denies liability for tax upon the gross receipts in the said amount of $700,812.89, with the resultant tax of $5606.50.

5. The said amount of receipts reported, to wit, $542,834.62, "From Directory Advertising," is money received by the defendant during the period of time covered by the report from advertising inserted in its directories; $541,384.12 of the said $542,834.62 was received from subscribers to telephone service of the defendant; the remaining $1450.50 was received from advertisers who were not such subscribers. Approximately 100 advertisers were not subscribers to telephone service. The total number of subscribers to telephone service was approximately 545,000, of whom approximately 18,000 were advertisers in its directories. A copy of the directory issued by the defendant company in the City of Philadelphia in the fall of 1925, which is typical of the directories issued for the Cities of Philadelphia, Pittsburgh and Erie during the period covered by the gross receipts report for the six months' period ending June 30, 1923, attached hereto and made a part hereof, is marked Exhibit "A;" a copy of the directory issued by the defendant company in the Borough of Coudersport in the fall of 1925, which is typical of the directories issued by the defendant company for all other places throughout the State of Pennsylvania during the period covered by the said gross receipts report, also attached hereto and made a part hereof, is marked Exhibit "B." The said receipts from such directory advertising include the amounts received from:

> (a) Advertising in directory........................$461,389.69

> (b) Charged extra listing in the classified section of directory ..................................... 73,337.89

> (c) Sale of company's own directories................. 8,107.04

> Total...................................$542,834.62

By the phrase "Advertising in Directory," identified above as *"a,"* is meant:

(1) Margins on alphabetical section listing pages, to wit: Space of Guy A. Willey Motor Co., on white page No. 397 of Exhibit "A," Space of Hotel Bloss, on white page No. 9 of Exhibit "B."

(2) Insert page, to wit: "Abbotmaid" ice cream advertisement between the alphabetical (first group of white pages) and classified (yellow pages) sections of Exhibit "A." Only one insert page appeared, and such insert page appeared in the Pittsburgh directory.

(3) All classes of display space in the classified sections, to wit: Advertisements of Burns & Speakman, F. E. Decker, etc., on yellow page No. 1 of Exhibit "A;" advertisements of Geo. E. Owens, etc., on yellow page No. 1 of Exhibit "B."

(4) All classes of display space following the last listing page of the alphabetical section, to wit: Advertisements of Taubert's Hardware on white page No. 48, and of S. Mette & Co. on white page No. 51, etc., of Exhibit "B."

(5) All advertising spaces on the inside front cover, inside back cover, back cover and bolt or backbone of Exhibits "A" and "B."

By the phrase "Charged extra listings in the classified sections of the directory, identified above as *"b,"* is meant:

The bold type listing of Amsterdam Bros. under the heading of "Abdominal Supporter Mfgrs." on yellow page No. 1 of Exhibit "A;" the display listing of Smith & Smith under the heading of "Stationery and Wall Paper," on yellow page VIII of Exhibit "B."

By the phrase "Sale of company's own directories," identified above as *"c,"* is meant the sum paid for directories published by the company which are sold to parties who wish to purchase them.

Defendant admits the necessity for telephone business of that portion of the directories in evidence consisting of the white pages containing an alphabetical arrangement of subscribers' names and their telephone numbers, excluding such advertising matter as appears thereon.

6. The amount of receipts above named, to wit, $157,978.27, "from charges for material furnished, and for work done by reporting company's employees; the answer hereto including all receipts from custom work or for installation of reporting company's own equipment or service," includes receipts upon which no claim for tax is made in the amount of $52,484.95, leaving a balance in receipts in the amount of $105,493.32, upon which the Commonwealth claims tax and upon which the defendant denies liability for tax, and consists of the following receipts, to wit:

(1) The amount received by the defendant company for:

*(a)* Standard telephone material installed in addition to the material required for standard installations.

*(b)* The time and expenses of employees in installing additional material.

*(c)* For repairs and rearrangement of the company's plant and equipment.

By "plant and equipment" is meant the poles, wires, cables, conduits, etc., which the telephone company ordinarily uses for the purpose of conducting a telephone business.

By "repairs" is meant the reconstruction of any damage done to plant and equipment owned by the telephone company or owned by the subscribers.

By "rearrangement" is meant any change in the original installation of the plant and equipment of the company or the subscriber, such as moving a switching device from one desk to another. Such work and material are fur-

620

nished only upon request of, and for the use and convenience of, the subscriber—$24,745.10.

The defendant charged each subscriber a fixed sum for installing what is known as standard telephone installations. The said amount of $24,745.10 is charged in excess of the charge made for such standard installations and consists of a charge made for standard telephone materials installed in addition to the material required for the standard installations, together with a charge for the time and expenses of employees in installing such additional material required for the additional installation, and includes, also, a charge for the repairs and rearrangement of the plant and equipment of the company for the subscriber, such work and material being furnished upon the request and for the use and convenience of the subscriber. This excess charge is collected from the subscribers. By the word "material" is meant telephone materials, such as wires, cables, poles, conduits, etc. The material so installed, as aforesaid, is used in connection with the furnishing of telephone service to such subscribers. Of the said $24,745.10, $8228.69 was received for material and $16,516.41 represented labor expense.

(2) The amount received by the defendant company for special material furnished in connection with installations of special character and the time and expenses of employees in installing the material, such work and material being furnished upon the request and for the use and convenience of the subscriber, in the amount of $409.58.

The expression "special material," as used in this paragraph, means telephone materials which are not used for standard installations, such as silk cords, gongs, mouldings, etc. The said "special material" is used in connection with the furnishing of telephone service to such subscribers. Of the said $409.58, $49.31 was received for material and $360.27 represented labor expense.

(3) The amount received by the defendant company for repairs, rearrangement of telephone or telegraph plant and equipment owned by others (excepting wire-using companies), such work being done for their use and convenience, $3280.55.

The repairs and rearrangements referred to consist of the furnishing, placing and erecting poles, repairs to the telephone cables, repairing of telephone circuits, refinishing of switch-boards and furnishing the necessary material for such repairs, refinishing and rearrangements. All of said repairs and rearrangements are upon or of their own private equipment and are connected with defendant's telephone service. Of the said $3280.55, $1069.80 was received for material and $2210.75 represented labor expense.

By the phrase "wire-using companies" is meant all companies which are in business for the purpose of transmitting light, power, messages, codes, etc., over wires, cables, etc.

(4) The amount received by the defendant company for material and the time and expense of employees in constructing, repairing and rearranging telephone or telegraph plant of other wire-using companies for their use and convenience, $34,219.38.

The constructing, repairing and rearranging of the telephone or telegraph plant of other wire-using companies consists of the repairing of equipment, rearranging of wires, replacing of poles, repairing of conduit line, enlarging and moving manholes, constructing conduits and manholes, stringing wires, etc., and furnishing the material necessary therefor, the receipts for which were $32,218.64, and the balance of the said $34,219.38, namely, $2000.74, are receipts from the sale of Morse equipment and the labor in connection there-

with. The phrase "wire-using companies" has the same meaning as that set forth in paragraph (3), *supra*. The said "other wire-using companies" herein referred to are connected directly or indirectly with the defendant's plant, and the plants of the said "other wire-using companies" are used by the defendant in the furnishing of its telephone service. Of the said $34,219.38, $6901.51 was received for material and $27,317.87 represented labor expense.

(5) The amount received by the defendant company from other wire-using companies, $17,169.52.

Included herein were receipts from the sale of material, which material was of the same character as that set forth in paragraph (1), and by the word "material" is meant telephone materials, such as wires, cables, poles, attachments, batteries, etc., the receipts from which were $16,648.57, and the balance of the said $17,169.52, namely, $520.95, were receipts from the sale of materials of the following character, viz., linoleum, furniture, chairs and Morse equipment. The phrase "wire-using companies" has the same meaning as that set forth in paragraph (3), *supra*.

(6) Material, etc., salvaged on telephone lines, equipment, etc., which defendant disposed of, $3676.08. These were amounts received from the sale of old material. Included herein were receipts from the sale of telephone material, which material was of the same character as that set forth in paragraph (1), such as poles, wires, cross-arms, etc., amounting to $1922.93, and the balance of the said $3676.08, namely, $1753.15, were receipts from the sale of materials of the following character, viz., boiler, safe, furniture, vacuum cleaner, gas engines, oil stoves, lockers, etc.

(7) The amount received by the defendant company and the time and expenses of employees installing its equipment used in conjunction with broadcasting equipment owned by others, $13,602. The defendant company owns only the equipment installed by it. The said amount of $13,602 was paid to the defendant for the time and expense of employees for installing and removing equipment owned by the defendant and used in connection with broadcasting equipment owned by others, and includes, also, the estimated depreciation on the said equipment of the defendant, and is divided as follows: Cost of installing and removing defendant's equipment, $8812.68; depreciation on defendant's equipment, $4789.32.

In addition to the said sum of $13,602, the defendant received a sum of money for the use of its equipment, which said sum was reported to and taxed by the State under the item found upon the gross receipts report form: "From transmission and delivery of telephone or telegraph messages," etc.

(8) The amount received by the defendant company from the sale of material, not including material furnished in connection with installation or to other wire-using companies, $6971.43.

The phrase "wire-using companies" has the same meaning as that set forth in paragraph (3), *supra*.

By the term "material" is meant telephone material, such as wires, cables, poles, attachments, batteries, etc.

(9) Miscellaneous, $1419.68.

These are receipts from the sale of scrap and junk, such as waste paper, barrels, etc.

7. The Commonwealth claims tax upon the said amount of receipts set forth in paragraph 5, *supra*, to wit, $542,834.62, and the amount of receipts set forth in paragraph 6, *supra*, to wit, $105,493.32, totaling $648,327.94, the amount of which tax is $5186.62, with interest thereon from sixty days

from date of the approval of the original settlement by the State Treasurer, to wit, Aug. 23, 1923, together with the Attorney-General's commission and costs, which liability defendant denies.

## Discussion.

This is an appeal from the tax settlement of the tax on gross receipts of the defendant by the Auditor General and State Treasurer, under the provisions of section 23 of the Act of June 1, 1889, P. L. 420, 432, for the six months' period ending June 30, 1923. The appellant admitted tax upon certain of its receipts and denied liability for the tax as to others. It was from the resettlement of tax approved by the State Treasurer Feb. 26, 1924, that the instant appeal was taken solely with reference to certain of the receipts.

It is contended by the appellant that its receipts from directory advertising, amounting to $542,834.62, and those from charges for material furnished and work done by the appellant's employees, amounting to $105,493.32, are not taxable. The Commonwealth claims a tax upon these two items totaling $648,327.94, contending that it is entitled to said tax under a fair construction of section 23 of the said Act of 1889. The pertinent language of this section of said act reads, *inter alia,* as follows: ". . . Every telephone or telegraph company incorporated under the laws of this or any other state or of the United States and doing business in this Commonwealth . . . shall pay to the State Treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation, . . . received . . . from telegraph and telephone . . . business done wholly within this State, . . . and for the purpose of ascertaining the amount of the same, it shall be the duty of the Treasurer . . . to transmit to the Auditor General a statement . . . of the amount of gross receipts . . . derived from all sources, and of gross receipts from business done wholly within the State during the preceding six months. . . ."

It will be noted that the defendant shall pay a tax of 8 mills upon the gross receipts of said corporation received from telegraph and telephone business. There are many definitions of the term "business," but we think the one controlling us is that contained in the opinion of Mr. Justice Brown in Com. *v.* Brush Electric Light Co., 204 Pa. 252, in which it is stated: ". . . The tax is not to be paid upon the gross receipts from electric lighting, but upon the gross receipts from the business of the company. . . . It is taxed on what it does. The statute imposes the tax not upon a portion of its receipts—those derived from a particular commodity it supplies to the public—but upon all of its receipts from its general business conducted under its franchises."

In order to carry on the telephone business of the appellant company, it is necessary that it furnish to its subscribers a directory, fully described in the stipulation of facts above stated. This directory is a necessity. The appellant chose to prepare such directory as it saw fit and made it a source of receipts, which it fostered by direct advertising, urging its subscribers to advertise therein, urging others to use the telephone and to advertise in the directory, pointing out the advantages to be derived not only from the use of the telephone, but also from advertising in such directory, giving the telephone numbers of subscribers and the telephone numbers of advertising subscribers, thus linking the use of the telephone appliances to the directory and to the subscribers and the advertisers. By so doing it swelled the volume of its business and increased its revenues. Having made said advertisements a source of receipts, it cannot now be permitted to enjoy the benefits of its acts and at the same time absolve itself from the consequences of such acts in the conduct, furtherance and enlargement of the business in which it was created to engage.

In order to sustain its contention that the receipts derived from advertisements in its telephone directories are not subject to the gross receipts tax provided in section 23 of the Act of 1889, appellant relies upon Com. v. Harrisburg Light and Power Co., 262 Pa. 238. It appears from the facts set forth in this case that the defendant was incorporated and engaged in supplying to the public light, heat and power by means of electricity. It was also engaged in carrying on the steam heating business, having purchased the property and franchises of the Harrisburg Steam Heat and Power Company. It was held that it was only liable for tax on such of its receipts as were derived from the business which it was authorized to transact as an electric light company, and was not liable for the tax on its receipts derived from the sale of steam and merchandise. We quote from the opinion of President Judge Kunkel, found on page 241, as follows: ". . . It would seem, therefore, from the limitation in the statute and from the interpretation put upon it in that case, that the phrase 'the business of electric light companies' means the business which such companies are authorized by their charter to conduct; that is, producing electricity and selling it to customers for the generation of light, heat or power. We are not at liberty to extend the statute to the business which they do by virtue of other franchises, those which they have purchased and which authorize a business different from that conducted under their franchises as electric light companies."

It does not require any argument to demonstrate that the ruling in the case from which we have quoted does not apply to the facts in the instant case. The appellant company in the instant case has not purchased the franchises of an entirely different corporation, but is exercising its franchise under its charter as a telephone company; and, as we have already shown, and as is admitted, the telephone directory is an essential and necessary part of that business. It could have prepared a directory without advertisements, but it chose to swell the gross receipts by the use of this advertising medium, and, therefore, we cannot sustain the contention that this case is ruled by Com. v. Harrisburg Light and Power Co.

Nor do we think the appellant's case is strengthened by Com. v. American District Telegraph Co., 44 Pa. C. C. Reps. 543, also reported in 19 Dauphin Co. Reps. 263, upon which its counsel relies. In this case it was held that the part of defendant's business denominated manual fire alarm and patrol signal service and combination night alarm and fire alarm service was telegraph business within the act. It was also held that where it employed a watchman to patrol its customer's premises, it transmitted information by him to its central office by means of electrical appliances and signals; and in the case where the customer employed the watchman, it received information by the same means. The installation of the service was purely auxiliary to the business and necessarily a part of it. The court held that the other items of settlement which were charged with a tax were very indefinite, and rejected because not satisfactorily proven, it being stated by the learned President Judge: ". . . It may be that the thermometer service was telegraph business, but the tax on such business cannot be ascertained, as we have no evidence to distinguish receipts from that service from the receipts which were derived from the other sources mentioned, and which do not seem to have accrued from telegraph business."

The further contention of the defendant is that the receipts from advertising in the telephone directories have not accrued to it from the transmission of telephone messages, and, therefore, they are not receipts from telephone business. The last quoted case does not support this contention. The statute

does not restrict the taxation to receipts from the transmission of telephone messages, but expressly taxes telephone business derived from the complete business of the corporation. Furthermore, the directory is essential to the transaction of telephone business.

We are of the opinion that it is not what a company is called by name but what it does, and from the doing of which it derives income, that subjects the gross amount received from the thing done to taxation. It is the substance that is material; if that is lacking, there can be no liability; if that exists, the name is unimportant: Com. v. New Castle Electric Co. et al., 5 Dauphin Co. Reps. 89.

In Com. v. Brush Electric Light Co., 204 Pa. 249, which case we think is controlling in the instant case, it was said by Mr. Justice Brown, page 242: ". . . The appellant . . . claims exemption from this tax upon certain items in its gross receipts, because they are not derived from electric lighting. They are for electric power furnished to individuals and corporations for manufacturing purposes, and for sales of electric supplies, such as lamps, drop lights, fans, etc. The contention of the appellant is that as it is incorporated as an electric light company, only its gross receipts from electric lighting are taxable. But such are not the words of the statute. They are clear and unambiguous, as they must be, if the Commonwealth is entitled to the taxation imposed. . . . The tax is not to be paid upon the gross receipts from electric lighting, but upon the gross receipts from the business of the company. For the purpose of enlarging and swelling the volume of its business, it furnishes not only electric light, but electric power to manufacturers and sells electric supplies. Having so extended its business beyond the mere furnishing of light by electricity, the company has largely increased its revenues, and it would be a strained construction of the words of the statute if the gross receipts from its business should be interpreted as meaning only its gross receipts from electric lighting, simply because it is called an electric light company. It is taxed on what it does. . . . Having, under what it regards as its franchises, not questioned by the Commonwealth, enlarged its business by extending the same beyond the mere furnishing of light, and having realized largely increased revenue from so doing, its plea for abatement of the tax claimed by the State is ungracious and cannot avail it in the face of the statute declaring what it shall pay."

As we have before stated, we think this authority is controlling. We are not here dealing with receipts derived from isolated and unrelated transactions, but receipts derived from a deliberate and carefully planned branch of the telephone business, fostered and encouraged by the appellant as part and parcel of the rendition of its telephone service. We are of the opinion, therefore, that the receipts derived by the defendant from directory advertising, amounting to $542,834.62, are taxable under the act.

Directing our attention now to the items in the settlement of the Auditor General and State Treasurer for material furnished and work done by the reporting company's employees, and for the installation of its own equipment or service, amounting to $157,978.27, it is admitted by the Commonwealth that receipts in the amount of $52,484.95 therein included are not claimed to be taxable by the Commonwealth; but the Commonwealth contends that the balance of said item, amounting to $105,493.32, is taxable. Every item of receipts included within the said total of $105,493.32 is derived from transactions directly in the line of business for which the appellant was incorporated. An examination of the stipulation of facts shows how this item is made up; for example, the company received $24,745.10 for standard telephone

material installed, in addition to the material required for standard installations, for the time and expense of employees installing the same, and for the repairs and rearrangements of the company plant and equipment; the sum of $3280.55 for repairs, rearrangements of telephone or telegraph plant or equipment owned by others; the sum of $34,219.38 for moving and the time and expense of employees in constructing, repairing and rearranging telephone or telegraph plant or other wire-using companies for their own use and convenience; the sum of $17,169.52 was received from other wire-using companies. These were the receipts from the sale of telephone materials, such as wires, cables, poles, brackets, insulators, batteries. The sum of $3676.08 was received from the sale of old material.

Also in subdivision (8) of paragraph 6 of the stipulation of facts, receipts amounting to $6971.43 were received by the company from the sale of material. The receipts in subdivision (9) of paragraph 6 of the stipulation of facts, amounting to $419.68, were from the sale of scrap and junk; and the receipts in subdivision (7) of paragraph 6, amounting to $13,602, were received by the defendant company for the time and expense of installing equipment owned by it and used in conjunction with broadcasting equipment owned by others.

At the hearing before the court *in banc*, counsel for the defendant called the witness Frank O. Malatech. The purpose of calling and examining this witness was stated by counsel for the defendant as follows: ". . . The part of the receipts which were alleged to be taxable here are what the telephone company calls 'custom work,' which has been described as sale of material. We disagree with the designation. The stipulation of facts is correct as stated, but we have just one or two questions to ask, which, we think, may tend to qualify but not in any way to contradict any fact that is stated in the stipulation."

The witness was then examined and his testimony was offered to prove that most of these services were rendered without profit to the company. This testimony was objected to by counsel for the Commonwealth, and was admitted subject to said objection. We are of the opinion that it was immaterial whether the receipts so derived were profitable to the company. This is a tax on gross receipts and not on profits. It would appear, however, that in some instances "they got more than the expense." (Notes of testimony, page 7.) Furthermore, on page 8, this witness testified, in answer to the question:

"Q. Now, what do you mean when you say it is not intended for the purpose of enlarging and swelling the volume of the business of the company? (Notes of testimony, page 7.) A. In other words, you take a piece of plant to install a subscriber's station, that is, plant money expended for the purpose of enlarging the company's business; we install that station, we get extra business on it, but the items that enter under custom work does not increase in any manner the business of the company. Q. What do you mean, the business of the company? A. Service."

"The Court: Q. Your business is to give service? A. Correct, sir. Q. Now, when you give service, the better service you give the better business you get, don't you? A. That is true. Q. Now, if you put on a 20-foot cord instead of a 6-foot cord, because a man wants it, you are pleasing the man? A. Correct, sir. Q. Aren't you then automatically improving the business of the company? A. I would not say under those conditions."

It appears from the evidence of the witnesses called that most of the services rendered for which charges were made, which go to make up the amount of

$105,493.32, were rendered without profit to the company as we have heretofore stated; and it appears from the testimony quoted that a part of the business of the defendant corporation was to render service, and that the better the service the company gave the better business it would get. As we have before stated, it is immaterial whether this service was rendered at a profit. We are of the opinion, therefore, that every item of receipts included within the said total of $105,493.32 is derived from direct transactions in line with the business of the defendant corporation. We are of the opinion they come within the purpose for which it was incorporated, and, therefore, that the said receipts derived from the sale of materials and appliances are subject to the tax: Com. v. New Castle Electric Co. et al., supra; Com. v. Brush Electric Light Co., supra.

For the reasons above stated, we have reached the following

### Conclusions of law.

1. The receipts of the defendant company, derived from directory advertising, amounting to $542,834.62, are subject to the gross receipts tax provided by section 23 of the Act of June 1, 1889, P. L. 420.

2. The receipts derived by the defendant corporation from the several items, amounting to $105,493.32, are subject to the gross receipts tax provided by the Act of 1889.

3. The costs of these proceedings are to be paid by the defendant:

Amount of tax...................................... $5186.62
Interest from Nov. 22, 1923, being sixty days after date of
final settlement, to March 18, 1929.................... 1656.28

$6842.90
Attorney-General's commission of 5 per cent.............. 342.14

Total ...................................... $7185.04

And now, March 18, 1929, judgment is hereby directed to be entered in favor of the Commonwealth, as against the Bell Telephone Company, in the sum of $7185.04, unless exceptions be filed within the time limited by law.

From Homer L. Kreider, Harrisburg, Pa.