## IN THE MATTER OF THE EXCISE TAX OF ROBERT HIND, LIMITED.

## No. 2259.

ARGUED AUGUST 7, 1936.     DECIDED DECEMBER 18, 1936.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an appeal by the taxpayer, Robert Hind, Limited, from a decision of the tax appeal court.

Pursuant to Act 42, 2d Sp. S. L. 1932, chapter 63, R. L. 1935 (later repealed by Act 119, L. 1935), the taxpayer, which operates a dairy business in Honolulu, filed a business excise tax return covering its operations for the calendar year 1933.

Section 1 of said Act 42 imposed an annual excise tax upon each person doing business within the Territory. Section 3 of said Act provided that the tax be measured by "(1) the net taxable income, if any, of such person obtained in doing business within the Territory for the preceding taxable year, and (2) the operating costs of such person in doing business within the Territory for the preceding taxable year; if, however, doing business in the preceding taxable year has resulted in a net loss, the amount of such net loss shall be deducted from the amount of such operating costs."

Section 4 of said Act provided among other things that "in computing operating costs, there shall be included the following: * * * 8. All ordinary and necessary expenses paid or accrued for payment for business operations actually conducted within the Territory, provided, however, that the following items shall be excluded from the computation of such expenses: * * * (c) When the business includes the purchase and sale or dealing in or with goods and products, the purchase price of the goods and products so purchased and sold, or the purchase price of merchandise and/or materials purchased, and incorporated and remaining in such goods or products."

In its return the taxpayer claimed as an exclusion from its operating costs the cost of feed and molasses used in its business in the amount of $68,465.55, which sum it contends fell within the meaning of the clause "purchase price of merchandise and/or materials purchased, and incorporated and remaining in such goods or products [sold]" as used in said Act.

The tax commissioner did not allow the amount claimed as an exclusion from operating costs in computing the tax, and assessed the taxpayer an additional tax in the amount of $1369.31. Upon appeal by the taxpayer the board of review allowed the taxpayer's claim whereupon the tax commissioner appealed to the tax appeal court which refused its allowance. It is from this decision that the instant appeal is taken.

The tax in question is measured in part by operating costs which the statute provides shall include "all ordinary and necessary expenses paid or accrued for payment for business operations actually conducted within the Territory."

It is not contended that the cost of feed and molasses used in feeding its cows is not an ordinary and necessary expense of the business of the taxpayer. Therefore unless the feed and molasses referred to are incorporated in and remain in the products dealt in or with by the taxpayer then the cost of such feed and molasses cannot be excluded in computing the tax.

Appellant has cited *Gould* v. *Gould,* 245 U. S. 151, and *Frear* v. *Wilder,* 25 Haw. 603, in support of its contention that taxing statutes are to be strictly construed in favor of taxpayers and against the government. This principle the court recognizes. It is also clear however that exemptions from taxation are strictly construed; in other words that taxation is the rule and exemption the exception. (*Bishop* v. *Gulick,* 7 Haw. 627, 630; *Oahu R. & L. Co.* v. *Shaw,* 12 Haw. 76; *Tax Assessor* v. *Wood,* 18 Haw. 485.)

Appellant cites Cooley on Taxation (2d ed.) p. 174; *Florer* v. *Sheridan,* 36 N. E. (Ind.) 365, 369; and *State* v. *Smith,* 63 N. E. (Ind.) 25, 29, in support of its contention that the exclusion from operating costs in question is not an exemption but a deduction, and that therefore the principle governing exemptions is inapplicable. With this con-

tention we cannot agree. The precedents cited by appellant involve constructions of the meaning of constitutional provisions governing exemptions from taxation designed to equalize taxation among all classes of taxpayers. In *Standard Life Ins. Co.* v. *City of Atlanta,* 106 S. E. (Ga.) 110, it was held that a deduction of insurance reserves in the ascertainment of personal property tax was an unconstitutional exemption within the meaning of the constitutional provision there involved. In our opinion these cases have no bearing on the case at bar and it would serve no useful purpose to attempt to reconcile them.

The statute in question here imposed a tax measured in part by operating costs of the taxpayer. Operating costs are defined as including all ordinary and necessary expenses for business operations. The Act then provides for the exclusion of certain ordinary and necessary business expenses from such operating costs. When a tax is measured by all operating costs and certain specific operating costs are excluded (to prevent double taxation or for other purposes) such items excluded from the measure are exemptions. (*Commonwealth* v. *McGrady-Rodgers Co.,* 174 Atl. [Pa.] 395; *Nashville Tobacco Works* v. *City of Nashville,* 260 S. W. [Tenn.] 449.) It follows that for the taxpayer to succeed on this appeal it must show that the amount of the exclusion claimed was the purchase price of material actually incorporated and remaining in the products which it dealt in.

It is contended by the taxpayer that the feed and molasses, the cost of which is claimed as an exclusion, are special foods generally designated as concentrates; that these foods contain proteins and vitamins which when fed to the cows became incorporated and remained in the milk sold to the consumers; and therefore under the law the cost of these concentrates should be excluded in calculating the tax.

It is a matter of common knowledge that all food consumed by cows is not incorporated in milk. Portions of it are converted into flesh and other portions are converted into fecal matter which is discharged from the cow by natural processes and of course add nothing to the quantity and quality of the milk. Whether the ascertainment of the amount or kind of feed that eventually becomes incorporated in and remains a part of the milk is possible or not it is obvious that the burden of showing to what extent, if any, such feed does enter into the milk should not fall on the government. To require the government to undertake an analysis of the organic changes of the concentrates within the mechanism of the cow would require the tax commissioner, in order to assure the enforcement of this tax law, to employ a staff of experts in dairying. The number of experts necessary in each of the other types of businesses carried on in the Territory in order to administer the tax law intelligently would be very large. It would be absurd to think that such a result was intended by the legislature in the enactment of the taxing statute. On the contrary it is more reasonable to believe that the legislature expected and therefore intended that the tax commissioner should administer the business excise tax, unencumbered by such scientific difficulties, in a reasonable and common sense manner.

The question then that must be determined is whether the taxpayer has shown that the exclusion claimed falls within the meaning of the applicable section of the statute.

The appellant contends that in order to maintain and use a dairy cow the cow must be fed certain special food which contains certain elements which enter into and constitute saleable milk. It is contended that without such special food the cow would give no more milk than enough to raise her usual calf. From this it is argued that the cost of all such special food should be excluded in determining

the excise tax. It is claimed that the testimony of various witnesses proves that the special feed in question was incorporated and remained in the milk produced by the dairy cows of the taxpayer.

The testimony of one of the taxpayer's witnesses illustrates the failure of the taxpayer to show to what extent the feed became incorporated and remained in the milk. "Q Now what is the result of feeding the dairy cows concentrates? A Well, the result is that the cows are maintained in a good, healthy condition, and have enough energy, and proteins and vitamins within themselves to produce a good flow of milk;" and again, "Q Have you made a chemical analysis of the milk produced by your cows? A Not right here in this particular dairy. I have in the past, and we have chemical tests for salts and so forth run by the Board of Health several times per month. Q That is for health purposes, isn't it? A That is right. Q But no chemical analysis is made of your milk to determine the presence of vitamins, proteins, minerals and those factors? A It is for the general amino acids, fat and the amount of salts;" and another witness: "Q Mr. Fletcher, have you made a chemical analysis of milk? A I have on the mainland and at the Hind-Clarke Dairy, so far as the butter fat and the bacteria go. Q Have you made any analysis for the purpose of determining the presence of proteins and minerals? A We do not feel that it is necessary to do that. Q You let them speak for themselves? A Enough milk analyses have been made in the past, and by authorities, to determine it does effect the minerals, vitamins and proteins in the milk, so we take that for granted. Q So you go under the advice of those authorities, is that correct? A More or less, yes. Q So when it comes down to it you feed the concentrates that you speak of for the purpose, first, of insuring a continuous flow of milk,—in other words, to get quantity, and in the second place, to get qual-

ity, a quality that will be acceptable for your trade, is that correct? A Yes, sir."

The testimony of the witnesses for the taxpayer clearly shows that the feeding of concentrates increases the quantity and improves the quality of the milk but does not show the extent to which any element of the feed enters into and remains in the milk.

All this testimony, we believe, is too indefinite and uncertain to constitute proof that the feed, the cost of which it is claimed should be excluded in the calculation of the tax, enters into and forms a part of the milk.

But even in a broader sense we do not believe that the feed is the kind of material entering into and remaining a part of the product sold that the legislature meant to be free of tax. There is a vast difference between the cloth going into a suit of clothes, or even grain going into the machinery of a brewery to produce beer and feed going into a cow to produce milk. Although by a fantastic figure of speech a cow is called an efficient milk-producing machine it differs substantially from what is ordinarily called machinery in that nothing need be fed a machine to maintain it in working condition while a cow requires food to keep it alive even if it does not produce anything. One of the taxpayer's witnesses said that grasses are also fed the cows but that the taxpayer considers the grasses as maintenance foods and regards concentrates as milk-producing foods. However he also said that cows could produce milk if more grass was available and fed to them and that in other places where they have good pastures milk is produced on a grass diet. It thus appears that both grass and the special feeds are instrumental in producing milk. They also maintain life. There is no proof of the extent to which these foods for which the deduction is claimed and those not claimed exempt contribute in the maintenance of the

cows and there is no proof of the extent to which the foods remained in the milk.

From the evidence it is impossible to tell what, if any, part of the special foods was incorporated into and remained in the product dealt in by the taxpayer.

For the foregoing reasons the decision of the tax appeal court is sustained.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for appellant.

*G. P. Kimball,* Deputy Attorney General (*W. B. Pittman,* Attorney General, with him on the brief), for the Tax Commissioner.