In the Matter of the Tax Appeal of HAWAIIAN TELEPHONE COMPANY, Taxpayer

NO. 5869

FEBRUARY 27, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND CIRCUIT JUDGE SODETANI, IN PLACE OF KIDWELL, J., DISQUALIFIED*

*Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

Taxpayer, Hawaiian Telephone Company, appeals from the Tax Appeal Court's findings of fact and conclusions of law and judgment in favor of the Director of Taxation entered on January 28, 1975, pursuant to HRS § 232-19 (1976). After careful consideration of all questions presented in this appeal, we affirm in part and reverse and remand in part.

Hawaiian Telephone Company (hereinafter "Hawaiian Telephone" or "Taxpayer") is a public utility within the meaning of HRS § 269-1 (1976) (subsequently amended) organized for the purpose of establishing telephone lines and to carry on a general telephone business. As a public utility, it is subject to the supervisory, regulatory, investigative and rate-making powers of the Public Utilities Commission (hereinafter "PUC" or "Commission") and, further, is susceptible

to taxation under Hawaii's Public Service Company Tax Law, Chapter 239 of the Hawaii Revised Statutes (as amended).[1] Under Chapter 239, an annual tax is levied and assessed upon each public utility (with certain exceptions not relevant to this appeal) based on gross income from public utility business at a rate ranging from 5.885 percent to 8.2 percent. HRS § 239-5 (1976).

Under the rules and regulations of the PUC, Taxpayer, as part of its general telephone service, is required to regularly publish telephone directories and distribute them to all of its subscribers. These directories must include, among other things, an alphabetical listing of its customers (except public telephones and those customers who request to be unlisted) including their names and addresses, as well as general instructions regarding the use, operation and repair of telephones. Public Utilities Commission, General Order No. 8 "STANDARDS FOR TELEPHONE SERVICE IN THE STATE OF HAWAII", Rule 4.7 (1965). Although not required to do so by the Commission, Hawaiian Telephone also 1) sells advertising in the classified sections of its directories (commonly referred to as the "yellow pages"), 2) sells boldface listings and additional lines in the regular alphabetical listing of subscribers (or the so-called "white pages" of the directories), 3) publishes and rents street address directories,[2] and 4) salvages old telephone directories for profit. It is the inclusion or the exclusion of these advertising, rental and salvage revenues (hereinafter referred to collectively as "directory revenues") in computing Taxpayer's gross income under the public service company tax law that is one of the principal issues raised in the instant appeal.

The tax assessments involved in this appeal are for 1970, 1971, 1972 and 1973. Pursuant to Chapter 239, the public

---

[1] Chapter 239 defines "public service company" as "a public utility, motor carrier, or contract carrier." HRS § 239-2 (1976).

[2] Hawaiian Telephone's street address directories are divided into two principal sections: an alphabetical listing of the street addresses of telephone subscribers, and a sequential listing of telephone numbers of subscribers.

service tax liability for any given year is based upon the gross income of a public service company during the preceding calendar year. HRS § 239-4 (1976). Therefore, for the purpose of the present controversy, Hawaiian Telephone's gross income for the 1969, 1970, 1971 and 1972 calendar years are relevant. As indicated in the record, Taxpayer's revenues for these years are as follows:

| PSC TAX YEAR | CALENDAR YEAR IN WHICH REVENUES WERE EARNED | GROSS TAXABLE INCOME EXCLUSIVE OF DIRECTORY REVENUES | TOTAL DIRECTORY REVENUES |
|---|---|---|---|
| 1970 | 1969 | $48,774,333 | $3,366,748 |
| 1971 | 1970 | 52,166,671 | 4,049,127 |
| 1972 | 1971 | 60,100,637 | 4,580,453 |
| 1973 | 1972 | 72,129,154[3] | 4,772,951 |

In 1970, 1971 and 1972, Hawaiian Telephone reported all of its directory revenues as gross income in each of its PSC tax returns. However, on June 20, 1973, it filed amended returns for those years which excluded directory revenues from gross income, claiming that they were subject to general excise tax and not PSC tax. At the same time, Hawaiian Telephone also claimed a refund based on the difference between taxation of 1970, 1971 and 1972 directory revenues at the PSC tax rates applicable to those years and taxation of such revenues at the lower general excise tax rate.[4] On the basis of these amended returns, the Department of Taxation issued a refund check in the amount of $104,299.99 to Hawaiian Telephone in June of 1973.

On or about September 20, 1973, Taxpayer filed its 1973 PSC tax return. This return, like the amended returns, did not include Hawaiian Telephone's directory revenues for the previous year as part of its reported gross income. Again, the

---

[3] An additional amount of $2,820,874 was the subject of another appeal. *See* In re Tax Appeal of Hawaiian Telephone Company, 57 Haw. 477, 559 P.2d 283 (1977).

[4] Taxpayer contends that the applicable tax rate under the general excise tax law, Chapter 237 of the Hawaii Revised Statutes, is four percent.

telephone company took the position that such revenues were subject to general excise, rather than PSC, tax.

Subsequently, on May 10, 1974, the Director of Taxation ("Director") mailed to Taxpayer three notices of assessment which, in effect, rejected the latter's position that directory revenues were not includable in gross income for purposes of computing the PSC tax. Accordingly, additional assessments totalling $627,418.99 in back taxes and $60,181.81 in interest thereon were levied against Hawaiian Telephone.

On May 19, 1974, Hawaiian Telephone filed in the tax appeal court a notice of appeal from the additional assessments of the Director of Taxation. In that court, Taxpayer argued 1) that the directory revenues were erroneously treated by the Director as "gross income" under the public service tax law; 2) that the directory revenues were not earned or received by it in its own capacity, but rather, were earned by and collected on behalf of two separate joint ventures, both of which Taxpayer was a member of, and therefore, the Director erroneously treated such revenues as income of Taxpayer; or that, in the alternative, portions of the directory revenues were collected by it as a true agent for and on behalf of another taxpayer, and therefore, the Director erroneously taxed it for the entire amounts collected; 3) that the assessment of PSC taxes against it for the 1970 tax year is barred by the applicable statute of limitations; and 4) that the Director erred in the computation of interest owed as a result of its delinquent payment of taxes. Based on stipulated facts, the tax appeal court upheld the assessments and, in doing so, rejected all of the arguments propounded by Hawaiian Telephone. An appeal to this court followed.

On appeal, Taxpayer relies on essentially the same points raised in its appeal to the tax court below. These issues will be addressed in the order in which they appear in Taxpayer's opening brief.

I. TAXATION OF DIRECTORY REVENUES

Taxpayer first contends that the tax appeal court's determination that its directory revenues were subject to PSC tax

was incorrect because such tax is imposed only on "gross income" as defined in HRS § 239-2(6) and such definition does not encompass directory revenues. The Director, on the other hand, asserts that the PSC tax is applicable to directory revenues since the activities from which those revenues were derived constitute part of Taxpayer's public utility business. In rejecting Taxpayer's argument, the tax court made, among others, the following conclusions of Law:

2. Taking all of the sections of Chapter 239, Hawaii Revised Statutes, together and using the plain meaning of section 239-2(6), Hawaii Revised Statutes, the public service company tax is imposed on gross income from the public service company business which includes public utility business.

3. The words "gross income" imply income from any and all sources, and as used in Chapter 239, the words are concerned with gross income that has its source in public utility business. *Hawaii Consolidated Railway Company v. Borthwick,* 34 Haw. 269 (1937).

4. Directories are a necessary part of the service of the Hawaiian Telephone Company to its customers and revenues from the directories and the street address directory are includible in gross income from the public utility business. *District of Columbia v. Chesapeake & Potomac Telephone Company,* 179 F.2d 814 (1950); *San Francisco Oakland Terminal Rys. v. Johnson,* 291 P. 197 (1930); *California Fireproof Storage Co. v. Brundige,* 199 Cal. 185, 248 P. 669, 671, 47 A.L.R. 811.

The fundamental objective in construction of statutes is to ascertain and give effect to the intention of the legislature. *See, e.g., Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664 (1975); *In re Taxes, Hawaiian Pineapple Company,* 45 Haw. 167, 177, 363 P.2d 990, 996 (1961). The intention of the legislature is to be obtained primarily from the language contained in the statute itself. *See In re Castro,* 44 Haw. 455, 458, 355 P.2d 46, 49 (1960); *Territory v. Fasi,* 40 Haw. 478, 484 (1954); *County of Kauai v. McGonagle,* 33 Haw. 915, 920 (1936). Accordingly, a basic tenet of statutory interpretation is that where the language of the law in question is plain and

unambiguous, construction by this court is inappropriate and our duty is only to give effect to the law according to its plain and obvious meaning. *See, e.g., In re Estate of Spencer,* 60 Haw. 497, 499, 591 P.2d 611, 613 (1979); *In re Palk,* 56 Haw. 492, 497, 542 P.2d 361, 364 (1975). On the other hand, where the language of a statute is ambiguous or of doubtful meaning, or where literal construction of the statute would produce an absurd or unjust result, clearly inconsistent with the purposes and policies the statute was designed to promote, judicial construction and interpretation are warranted and also the court may resort to extrinsic aids to construction. *State v. Ogata,* 58 Haw. 514, 518, 572 P.2d 1222 (1977); *County of Kauai v. McGonagle, supra.*

Moreover, with respect to revenue statutes in particular, a special rule of construction is applicable. As stated by this court in *Frear v. Wilder,* 25 Haw. 603 (1920):

> It is a cardinal rule of construction that a statute imposing taxes is to be construed strictly against the government and in favor of the taxpayers and that no person and no property is to be included within its scope unless placed there by clear language of the statute. (Sutherland Statutory Construction p. 462; Black's Federal Income Taxes, Sec. 27.) "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen." *Gould v. Gould,* 245 U.S. 151.

25 Haw. at 607 (citations omitted); *also cited in In re Taxes, Hawaiian Pineapple Company, supra* at 189, 363 P.2d at 1002, *and Hawaiian Trust Company v. Borthwick,* 35 Haw. 429, 435-36 (1940). *See also In re Tax Appeal of Aloha Motors, Inc.,* 56 Haw. 321, 326, 536 P.2d 91, 94 (1975); *Honolulu Star Bulletin, Ltd. v. Burns,* 50 Haw. 603, 604, 446 P.2d 171, 176 (1968); *In re Excise Tax of Robert Hind, Ltd.,* 34 Haw. 40, 42 (1936); *In re Assessment of Taxes, C. Brewer & Company,* 15 Haw. 29, 38 (1903); *Castle & Cooke v. Luce,* 5 Haw. 321, 324 (1885). It is important to note, however, that the rule of strict

construction with regard to taxing statutes should only be resorted to "as an aid to construction when an ambiguity or doubt is apparent on the face of the statute, and then only after other possible extrinsic aids of construction available to resolve the ambiguity have been exhausted," *Bishop Trust Company v. Burns*, 46 Haw. 375, 399-400, 381 P.2d 687, 701 (1963). *See In re Taxes, Hawaiian Pineapple Company, supra* at 193, 363 P.2d at 1004; *Hawaiian Trust Company v. Borthwick, supra* at 436-37; *Apokaa Sugar Company v. Wilder*, 21 Haw. 571, 576 (1913).

In light of the above principles, we must now examine the statute in controversy. HRS § 239-2(6) provides in pertinent part:

(6) "Gross income" means the gross income from public service company business as follows:

. . . .

(B) Gross income from the transportation of passengers or freight, or the conveyance or transmission of telephone or telegraph messages, or the furnishing of facilities for the transmission of intelligence by electricity, by land or water or air . . . .

Although, as pointed out by the tax court, the term "gross income" has been construed so expansively as to include "income for any and all sources," *see Hawaii Consolidated Railway v. Borthwick*, 34 Haw. 269, 273 (1934), the definition set forth in Chapter 239 is more narrow in scope than its common law counterpart. Between the two, the latter must prevail. "The legislature has a broad power to define terms for a particular legislative purpose, and the courts, as a general rule of construction, are bound to follow legislative definitions of terms rather than commonly accepted dictionary, judicial or scientific definitions." *State v. Kantner*, 53 Haw. 327, 329, 493 P.2d 306, 308, *cert. denied*, 409 U.S. 948 (1972). *See also Bailey's Bakery v. Borthwick*, 38 Haw. 16, 28 (1948); *Akai v. Lewis*, 37 Haw. 374, 379 (1946). Hence, the resolution of the tax question presented here hinges on a determination of whether the phrase "gross income from . . . the conveyance or transmission of telephone . . . messages, or the

furnishing of facilities for the transmission of intelligence by electricity'' includes, or can be reasonably construed to include, Hawaiian Telephone's directory revenues.[5]

In determining that Taxpayer's directory revenues were includible in gross income for PSC tax purposes, the tax court relied on the decisions in *District of Columbia v. Chesapeake & Potomac Telephone Company*, 179 F.2d 814 (D.C. Cir. 1950); *San Francisco-Oakland Terminal Rys. v. Johnson*, 120 Cal. 138, 291 P. 197 (1930); and *California Fireproof Storage Company v. Brundige*, 199 Cal. 185, 248 P. 669 (1926). However, after reviewing those cases, we believe that they are distinguishable from the case at hand and, therefore, offer little support for the conclusion reached.

In *District of Columbia v. Chesapeake & Potomac Telephone Company, supra*, the federal appeals court was asked to review a decision of a board of tax appeal involving the taxation of gross receipts derived from the taxpayer-telephone company's 1) sale of advertising space and black letter listings in its classified directory; 2) sale of street address directories; 3) sale of directories to out-of-state telephone companies; and 4) sale of directory covers, pursuant to a District of Columbia public utilities franchise statute. The particular statute involved in that appeal provided in part that "telephone companies . . . shall make affidavit . . . as to amount of its or their gross earnings or receipts . . . for the

---

[5] We reject the Director of Taxation's position that subparagraph (B) of HRS § 239-2(6) in no way restricts or limits the preceding phrase "'Gross income' means the gross income from public service company business," and that subparagraph (B) was merely for the purpose of designating the different public service company businesses affected by Chapter 239. As Taxpayer correctly points out, such a construction completely ignores the connecting and limiting words "as follows." *See* Blue Diamond Poultry Farms v. Commissioner of Tax, 253 Minn. 465, 91 N. W.2d 595 (1958). "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." In re Island Airlines, Inc., 47 Haw. 87, 112, 384 P.2d 536, 565 (1963).

Furthermore, if the inclusion of subparagraph (B) was, as the Director contends, only for the purpose of enumerating the type of public service company businesses involved and not for the purpose of limiting the type of gross income subject to PSC taxation, subparagraph (B) would not begin with the express words "gross income from."

preceding year and [each] telephone company shall pay to the collector of taxes of the District of Columbia per annum 4 per centum on such gross receipts, from the sale of *public utility commodities and* services.'' D.C. Code § 47-1701 (1940) (emphasis added). Although the court did in fact hold, *inter alia,* that the telephone company's revenues from the sale of directory advertising constituted gross receipts from the sale of a public utilities service or commodity and as such were subject to the franchise tax, the statutory phrase "public utilities commodities and services'' is markedly different from the operative language of HRS § 239-2(6) (B). Whereas the former is rather comprehensive and amenable to broad judicial interpretation, HRS § 239-2(6) (B), in contrast, appears to be quite restrictive, clearly confining its application to specific types of activities, to wit: the conveyance or transmission of telephone messages and the furnishing of facilities for the transmission of messages by electricity.

The second case cited by the tax court was *San Francisco-Oakland Terminal Rys. v. Johnson, supra.* In that case, the Supreme Court of California was asked to decide, *inter alia,* whether receipts from the sale of food, magazines, papers and tobacco in commissaries on board ferryboats owned by an electric railway company were subject to taxation under a provision of the state constitution. Reasoning that, because the ferryboats were a necessary and constituent part of the railway company's property used in conducting its public utility, and since the commissaries on said ferryboats were for the use and convenience of its passengers and the revenues received therefrom were exclusively from the passengers using said ferryboats, the court ultimately found that the receipts in question were taxable. 210 Cal. at 154, 291 P. at 203. Again, however, we do not believe that the tax court's reliance on that case was justified since the question involved therein — whether the receipts from taxpayer's ferryboat commissaries were derived from the operation of property exclusively used by taxpayer in its railway business — has little relevance to the issue before this court.

In *California Fireproof Storage Company v. Brundige, supra,* the last of the three cases relied upon by the tax court,

the Supreme Court of California was asked to determine whether it was proper for the state railroad commission to assume jurisdiction over a complaint against a telephone company involving, among other things, rates for advertising in telephone directories. In its decision compelling the railroad commission to take and exercise jurisdiction over the subject matter of the complaint, the court stated:

> In the development of this form of public service telephone companies have found it practicable and profitable to diminish the cost and increase the profits of operation by making use of its directories as a means and form of advertising available to its subscribers. The activities of these companies in this direction have taken on two forms: First, that of the insertion of advertising matter in connection with its classified list; second, in the printing in the alphabetical list of its subscribers the names of those who are willing to pay for such preference in boldface type, or, in other words, in a better and clearer type than that employed in printing the names of subscribers not paying extra for such preferment. Granting the right of these public service corporations to employ this instrumentality for such profitable purposes, we cannot do other than regard its use for such purposes as a mere incident in the operation of its public service over which the regulating body ought to have full control.

199 Cal. at 188-89, 248 P. at 671. The tax question presently confronting this court is, at best, only remotely related to the issue of whether directory advertising is a proper subject of public utilities regulation, and therefore, we find the decision in *California Fireproof Storage Company* to be unpersuasive.

In addition to the cases cited by the court below, the Director of Taxation also directs our attention to *Commonwealth v. Bell Telephone Company*, 12 Pa. D. & C. 617 (1929), and 2 O. Pond, LAW OF PUBLIC UTILITIES § 679, at 1332 (4th ed. 1932).

The court in *Commonwealth v. Bell Telephone Company* did in fact decide that taxpayer's receipts from its directory advertising sales were subject to a state franchise tax pertaining to telephone and telegraph companies. We note, however,

that like the tax statute involved in *District of Columbia v. Chesapeake & Potomac Telephone Company,* discussed *supra,* the statutory provision at issue in that case was, by its own terms, broad in scope and susceptible to liberal interpretation.[6] As the court explained:

> It will be noted that the defendant shall pay a tax of 8 mills upon the gross receipts of said corporation received from telegraph and telephone business. There are many definitions of the term "business," but we think the one controlling us is that contained in the opinion of Mr. Justice Brown in Com. v. Brush Electric Light Co., 204 Pa. 252; in which it is stated: ". . . The tax is not paid upon the gross receipts from electric lighting, but upon the gross receipts from the business of the company. . . . It is taxed on what it does. The statute imposes the tax not upon a portion of its receipts — those derived from a particular commodity it supplies to the public — but upon all of its receipts from its general business conducted under its franchises."
>
>     \*     \*     \*     \*
>
> . . . The statute does not restrict the taxation to receipts from the transmission of telephone messages, but expressly taxes telephone business derived from the complete business of the corporation.

12 Pa. D. & C. at 622-24. Because of the stark contrast between the statutory provision involved in that case and HRS § 239-2(6), we do not feel compelled to reach the same conclusion as did the Pennsylvania court.

Neither Taxpayer nor this court disputes that the publication and the distribution of telephone directories are necessary adjuncts to carrying on a telephone company business

---

[6] The pertinent language of the statute involved therein provided in part:

    Every telephone or telegraph company incorporated under the laws of this or any other state or of the United States and doing business in this Commonwealth . . . shall pay to the State Treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation, . . . received . . . from telegraph and telephone . . . business done wholly within this State.

Section 23 of the Act of June 1, 1889, P. L. 420, 432, *quoted from* 12 Pa. D. & C. at 622.

and that, this being the case, the manner in which these activities are carried out should be subject to some degree of government regulation.[7] Nevertheless, we believe that questions pertaining to the desirability and need to regulate public service companies, such as Hawaiian Telephone, and the various functions they perform within the scope of their respective public service business, exist wholly apart from the question of whether certain revenues derived by these companies should be subject to state taxation. Stated differently, it does not follow, absent specific statutory authority, that revenues earned by public service companies should be taxable under Chapter 239 merely because the activities from which they were generated are part of or incident to public service company business.

In conclusion, we agree with Taxpayer that the Tax Appeal Court erred insofar as it held that the directory revenues were includible in gross income under the PSC tax law. Reading the words of HRS § 239-2(6) according to their ordinary and popular meaning, as we must, *see In re Tax Appeal of Pacific Marine & Supply Company*, 55 Haw. 572, 577, 524 P.2d 890, 894 (1974); *Hawaiian Beaches, Inc. v. Kondo*, 52 Haw. 279, 281, 474 P.2d 538, 540 (1970), this court is of the opinion that Hawaiian Telephone's directory revenues can by no stretch of the imagination be characterized as "income from the conveyance or transmission of telephone messages or the furnishing of facilities for the transmission of intelligence by electricity." Furthermore, it would not, in the case at bar, be proper for this court to venture beyond the plain language of the statute to determine whether it can be reasonably construed to include the receipts in controversy, since we fail to discern any ambiguity in the language

---

[7] As stated in 2 O. Pond, LAW OF PUBLIC UTILITIES § 679, at 1332 (4th ed. 1932), cited by the Director:

In regulating the service and fixing the rate of telephone companies, the [public utilities] commission is charged with the duty of regulating the issue of telephone directories because they are a necessary instrumentality in rendering the service, and the cost and receipts from them are subject to the control of the commission.

employed by the legislature and since we are not convinced that a literal application of the statutory definition would lead to an absurd or unjust result. Quite to the contrary, the consequence of our decision — that revenues derived from certain commercial activities engaged in by a public service company will be deemed beyond the reach of the public service company tax law — appears to have been contemplated by the legislature itself. HRS § 239-4 (1976) provides in pertinent part:

> In case any public service company carries on lines of business other than its public service company business, the receipts therefrom shall not be subject to tax under this chapter, but the same tax liabilities shall attach to such public service company on account of such other lines of business as would exist if no public service company business were done.

Furthermore, we note that the effect of our decision will not be to completely insulate Taxpayer's directory revenues from taxation altogether, because, as Hawaiian Telephone concedes, such revenues will still be susceptible to taxation at four percent under the general excise tax law.[8]

Therefore, inasmuch as the tax court erred in determining that directory revenues were includible in gross income for PSC tax purposes, the judgment of the same is reversed.

II. DIVISION OF INCOME — JOINT VENTURE THEORY

In 1971, Hawaiian Telephone entered into two separate agreements with the General Telephone Directory Company (Directory Company) for the publication and sale of directory advertising in the telephone directories and for the publication and rental of street address directories. In the tax court, Taxpayer argued that, by virtue of these agreements, it and

---

[8] Although, under Chapter 237, public service companies enjoy a limited exemption with respect to gross income from general excise tax, such exemption only applies to gross income which is included in the measure of tax imposed by Chapter 239. HRS § 237-23 (1976).

the Directory Company operated as joint venturers during the periods in question and, therefore, it should not be liable for taxes on the entire amounts of directory revenues collected.[9] To the contrary, it asserted that it should be allowed to exclude from gross income those portions of the directory revenues that were payable to the Directory Company pursuant to the 1971 agreements.

In upholding the assessments of the Director of Taxation based on the entire amounts of directory revenues collected by Taxpayer, the tax appeal court determined that the agreements between Hawaiian Telephone and the Directory Company did not evidence the requisite intention to be partners or joint venturers. On its appeal to this court, Taxpayer contends that the court below erred in denying it partnership status for tax purposes.

Had the challenged assessments been levied pursuant to Hawaii income tax law,[10] it may have been to Taxpayer's advantage to be recognized as a partner or joint venturer. For purposes of income tax, partnerships are not subject to taxation *per se,* but rather only the persons carrying on the business as partners are liable for income tax in their separate or individual capacities. That is, no income tax liability accrues to the partnership itself as a result of income from partnership business, although each partner is taxed on his or her distributive share of partnership income. *See* HRS § 235-60 (1976). What Taxpayer fails to recognize, however, is that the principles applicable to the income tax law are not necessarily relevant to questions arising under general excise tax law.

The Hawaii general excise tax law provides for the imposition of an annual privilege tax on "persons" on account of their business and other activities in the State measured by the application of certain prescribed rates against values of products, gross proceeds of sales or gross income. HRS §

---

[9] Taxpayer claims that, for Hawaii tax purposes, there is no distinction between a joint venture and a partnership. *See* HRS § 235-60 (1976); 26 U.S.C. §§ 761(a), 7701(a)(2).

[10] Chapter 235 of the Hawaii Revised Statutes.

237-13 (Supp. 1979). Because "person" is defined, for general excise tax purposes, to include partnerships and joint ventures, *see* HRS § 237-1(2) (1976), the partnership or joint venture itself is liable for excise tax on gross income stemming from partnership or venture business. Therefore, contrary to what occurs under the income tax law, neither partnership nor joint venture revenues are "passed through" to the individual partners or venturers.[11]

In light of the foregoing analysis, we conclude that any general excise tax levied against Taxpayer based on the entire amounts of directory revenues collected by it would have been proper regardless of whether such revenues were earned in its individual capacity or whether such revenues were earned by the alleged joint ventures. Even if we were to acknowledge that Hawaiian Telephone and the Directory Company were in fact joint venturers for the purpose of engaging in the activities described herein, the former would at the very least be jointly liable for taxes payable by the joint ventures in accordance with partnership law.[12] *See* HRS § 425-115(b) (1976).

III. DIVISION OF INCOME — AGENCY THEORY

Both of the 1971 agreements between Taxpayer and the Directory Company provided that the latter's share of the

---

[11] It is clearly within the province of the legislature to treat partnerships as taxable entities. *See* Burnet v. Leininger, 285 U.S. 136, 142 (1932); Tax Review Board v. Belmont Laboratories Company, 392 Pa. 473, 141 A.2d 234 (1958); A. Bromberg. CRANE AND BROMBERG ON PARTNERSHIP § 3(d) (1968).

[12] Although it is unclear from the record whether or not the Director of Taxation was aware of the putative joint ventures during the tax years in question, Taxpayer may also be individually liable for any general excise tax payable by the same based on agency and partnership principles. Where a partner, acting within the scope of partnership business, incurs an obligation without disclosing the existence of the partnership and the other party is ignorant thereof, personal liability will attach. *See* Martino & Son v. Catalano, 3 La. App. 219 (1926); Stanley v. Merchant, 140 App. Div. 797, 125 N.Y.S. 587 (1910); Miller v. White, 112 S.W.2d 487 (1937). *Cf.* RESTATEMENT (Second) OF AGENCY § 322 (1958).

directory revenues "shall be collected by the Telephone Company for the account and benefit of and as the exclusive property of the Directory Company, and the Telephone Company, as agent for the Directory Company, shall remit to the Directory Company" its proportionate share of such revenues on a periodic basis. Taxpayer argues that, where a principal-agency relationship exists, taxes will not be payable by the agent on receipts he collects for, and that flow through to, his principal. Therefore, it contends, it should have been allowed to exclude from its reportable gross income the portions of directory revenues that were collected for and on behalf of the Directory Company.

We find no merit in Taxpayer's argument.

HRS § 237-1(2), which designates who is liable for payment of general excise tax, provides in part:

"Person" or "company" includes every individual, partnership, society, unincorporated association, joint adventure, group, hui, joint stock company, corporation, trustee, personal representative, trust estate, decedent's estate, trust, or other entity, *whether such persons are doing business for themselves or in a fiduciary capacity*, and whether the individuals are residents or nonresidents of the State, and whether the corporation or other association is created or organized under the laws of the State or of another jurisdiction. Any person who has in his possession, for sale in the State, the property of a nonresident owner, other than as an employee of such owner, shall be deemed the seller of the property, when sold. (Emphasis added).

From the language of this provision, we believe that it was the clear intent of the legislature to impose the tax upon all revenues received by individuals doing business in the state, irrespective of whether such business is carried out in an individual capacity or as an agent to another. Insofar as Taxpayer was jointly engaged with the Directory Company in the business of publishing, soliciting advertising in, and renting telephone directories, and insofar as it collected the Directory Company's share of the revenues earned as a result of those activities, it was "doing business" as both an individual

and a fiduciary, and, accordingly, its tax liability should be based on the entire amounts of directory revenues.[13]

## IV. STATUTE OF LIMITATIONS AND COMPUTATION OF INTEREST

In the instant appeal, Taxpayer lastly argues that the Director's PSC tax assessment for 1971 was barred by the applicable three-year limitations period and that the Director erred in computing the interest owed under the PSC tax law. However, having determined that the directory revenues should properly have been taxed under the general excise tax rather than the public service company tax law, these issues now become moot.

The tax appeal court's determination that Taxpayer was correctly assessed for all of the directory revenues collected is affirmed and the case is remanded to the tax court for a redetermination of Hawaiian Telephone's tax liability for 1970 through 1973 under the general excise tax law.

*Hugh Shearer and H. Mitchell D'Olier (Goodsill Anderson & Quinn* of counsel) for Taxpayer-Appellant.

*Alana W. Lau,* Deputy Attorney General, for Director of Taxation-Appellee.

---

[13] Taxpayer's liability might also be premised upon its failure to apprise the Director of Taxation that it was acting, in part, on behalf of the Directory Company. *See* note 12, *supra.*