# IN THE MATTER OF THE ESTATE OF ROBERT STAFFORD SPENCER, Deceased

## NO. 6101

MARCH 2, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY OGATA, J.

Contestants-appellants (hereinafter appellants), who are children of the deceased testator, appeal from an Order Denying Motion for Declaratory Judgment and from an Order of Probate entered by the court below. The question presented to us on this appeal is whether a will in which the testator gives and bequeaths his entire estate to a woman by her maiden name, is revoked by the subsequent marriage of the testator to that woman by operation of HRS § 536-11 (1975 Supp.).[1] This section provided the following:

By marriage. If, after the making of a will, the testator or testatrix marries and no provision is made in the will for such contingency, such marriage shall operate as a revocation of the will, and the will shall not be revived by the death of the testator's or testatrix's spouse.

We hold that the statute operated to revoke the will and reverse the orders entered by the court below.

The facts in this case are not in dispute. On October 17, 1974, the testator, Robert Stafford Spencer (hereinafter "testator"), then a widower, executed a will in which he left his entire estate to "Sandra Jean Cantwell, of 361 Laleihoku Street, Wailuku, County of Maui, State of Hawaii." On December 28, 1974, testator married Sandra Jean Cantwell (hereinafter "appellee"). On January 10, 1975, the testator died, leaving as survivors, the appellee, his wife, and two children by a prior marriage, who are the parties involved in this dispute.

Appellee filed in the court below a petition for probate of the will executed on October 17, 1974. Appellants thereafter filed an appearance and contest of will, and about two weeks later, filed a motion for declaratory judgment requesting the court to declare that the will submitted for probate had been revoked by the subsequent marriage of their father to Sandra

---

[1] HRS § 536-11 (1975 Supp.) was the applicable statute when the will was made and at the time of the testator's subsequent marriage. It was repealed by the Uniform Probate Code, effective as of July 1, 1977. The Uniform Probate Code provides for revocation of a will by divorce or annulment only and does not provide for revocation of a will by subsequent marriage.

Jean Cantwell, the sole beneficiary. At the hearing on the motion, appellee, over objection by appellants, was permitted to introduce evidence that tended to indicate that, at the time testator executed his will, he intended to marry Sandra Jean Cantwell. This evidence showed that prior to the marriage, on August 21, 1974, testator had designated the testamentary beneficiary as the beneficiary of his interest in the State Employees' Retirement System, under the designation of "Sandra Tarlton Spencer", and had referred to her on such form as his wife; and, that on September 3, 1974, the parties had met with the Reverend Winkler to set a date for their marriage. Upon these facts, the court below found that the testator's will was not revoked by operation of HRS § 536-11 (1975 Supp.). The order denying the motion for declaratory judgment further stated:

> The Court further finds that HRS § 536-11 does not automatically revoke a will made prior to marriage where such will names as beneficiary a person who later becomes the spouse of the testator, where there is clear evidence that the testator and such person intended to marry, even though there is no express provision in the will stating that it was providing for the contingency of such marriage;".

I.

HRS § 536-11 (1975 Supp.) must be given effect according to its plain and obvious meaning. We have said that this court is bound by the plain, clear and unambiguous language of a statute unless the literal construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the statute. *Tangen v. State Ethics Commission*, 57 Haw. 87, 550 P.2d 1275 (1976); *In re Palk*, 56 Haw. 492, 542 P.2d 361 (1975); *State v. Park*, 55 Haw. 610, 525 P.2d 586 (1974); *Pacific Insurance Co. v. Oregon Automobile Ins. Co.*, 53 Haw. 208, 490 P.2d 899 (1971). We think the language used in HRS § 536-11 (1975 Supp.) is explicitly clear and unambiguous, and the literal construction does not produce a result that is absurd and

unjust and clearly inconsistent with the purposes and policies of the statute. The statute provides in clear terms that "[if,] after the making of a will, the testator . . . marries . . . such marriage shall operate as a revocation of the will," unless "provision is made in the will for such contingency". It is clear to us that "contingency" refers to a testator's marriage after having made a will. The will of the testator in the instant case does not contain any provision with respect to the marriage of the testator as the trial court so found in its order denying the motion.

Appellee argues that to revoke the will would produce a result that is absurd and unjust and clearly inconsistent with the purpose of the statute by reducing her share of testator's estate by two-thirds. Notwithstanding revocation of the will, however, the appellee, although no longer entitled to testator's entire estate, is protected by her dower rights under HRS Chapter 533. Additionally, the result in the instant case is not clearly inconsistent with the legislative purpose in enacting this statute.

The earlier, predecessor statutes of HRS § 536-11 codified the common-law doctrine of revocation of a man's will by marriage and birth of a child. *See In re Estate of Santelli,* 28 N.J. 331, 146 A.2d 449 (1958); 79 Am.Jur.2d *Wills* § 632. The purpose of the common law doctrine was not solely to protect the spouse as she was not an "heir," nor the children, as birth of issue, in and of itself, would not revoke a man's will. As Professor Atkinson has suggested, the more tenable theory behind the common-law doctrine was that there was such a change in the testator's situation that the law should regard the will as revoked regardless of the wishes of an individual testator. Atkinson on Wills 428-429 (2d Ed. 1953).

Our statute prior to 1951 had required marriage and birth of a child in order to revoke a man's pre-marital will. See Revised Laws of Hawaii 1945 § 12179. By Act 270, S.L.H. 1951, it was amended to read as it appears in HRS § 536-11:

> By marriage and birth or by adoption of child. If, after the making of a will, the testator marries and has a child born to him, or marries and legally adopts a child, and no provision is made in the will for such contingency, such

marriage and birth, or such marriage and adoption, shall operate as a revocation of the will.

In 1973, the legislature amended HRS § 536-11 by deleting the requirement that birth or adoption of a child follow the man's marriage in order to work a revocation of his pre-marital will and, at the same time, repealed HRS § 536-12 which provided for the revocation of a woman's will upon her marriage.[2] That amendment further provided the language "[if,] after the making of a will, the testator or testatrix marries and no provision is made in the will for such contingency, such marriage shall operate as a revocation of the will, and the will shall not be revived by the death of the testator's or testatrix's spouse," now found in HRS § 536-11 (1975 Supp.). The legislative history on H.B. No. 295, introduced in the Seventh State Legislature, Regular Session 1973, sheds significant light on the purpose of this amendment. The 1973 House Journal stated in S.C. Rep. No. 694, at 1080-1081, as follows:

> Under the existing law, women are treated differently from men regarding revocation of wills upon marriage. The effected change to section 536-11 and the repeal of section 537-12 is intended to obtain equality between the sexes by making the subsequent marriage automatically resolve [revoke] previous wills for both types of spouses and to render the death of either spouse not to revive such previous will.

To the same effect see S.C. Rep. No. 824, 1973 Senate Journal at 959.

Not only does the plain and clear language of HRS § 536-11 (1975 Supp.) require us to conclude that the subsequent marriage of the testator operated to revoke his will; but that this was the intent of the legislature is also shown in the above legislative reports pertaining to the last amendment to this section. Under these circumstances, we conclude that the will in the instant case was automatically revoked by the subsequent marriage of the testator inasmuch as no provision was made in the will for such contingency.

---

[2] See Act 102, S.L.H. 1973, which took effect May 15, 1973.

## II.

Moreover, merely designating "Sandra Jean Cantwell" as the beneficiary of his entire estate did not provide in the will for the contingency of subsequent marriage, for in doing so, the testator did no more than he would have done in leaving any testamentary gift and the statute requires more than this. In *Fulton Trust Co. v. Trowbridge*, 126 Conn. 369, 11 A.2d 393 (1940), the court was confronted with the application of a statutory provision similar to ours. In that case the statute provided that "[i]f, after the making of a will, the testator shall marry or a child shall be born to the testator or a minor child shall be legally adopted by him, *and no provision shall have been made in such will for such contingency*, such marriage, birth or adoption of a minor child shall operate as a revocation of such will." (Emphasis added.)

The testator had made provision in his will "for the maintenance and education of Peter Trowbridge, who is now a member of my household." Peter had been obtained by the testator and his wife from an adoption nursery in 1926. Both intended at all times to adopt the child, but due to procrastination he was not adopted until 1930. The will in question was executed in 1929. The court held that the adoption of Peter after the execution of the will revoked the will. It said that the testamentary intent to provide "for such contingency" must be gathered from the will itself, and there being no ambiguity in the language of the will, extrinsic evidence to show intention was held to be inadmissible. It further said at 126 Conn. 372, 11 A.2d 394, that "[t]here is nothing in the will which can be construed as . . . a provision for the contingency." The same infirmity exists in the will in this case.

More recently in *Johnson v. Cromer*, 234 Ga. 73, 214 S.E.2d 644 (1975), it was held that the subsequent marriage of the testator effectively revoked a will made by him. That case involved a Georgia statute, Code Annotated 113-408, providing that "[in] all cases, the marriage of the testator . . . subsequent to the making of a will, in which no provision is made in contemplation of such event, shall be a revocation of the will." The language used in the Georgia statute is not as

specific as set forth in HRS § 536-11 (1975 Supp.) which requires that "provision is made in the will for such contingency." However, it was stated in that case at 234 Ga. 74, 214 S.E.2d 645, that: "It is not sufficient that the will contains a provision as to the person who is subsequently married; the will must provide for the event of marriage. [Citations omitted.] The terms of the will itself must show that the testator contemplated the event; parol evidence is not admissible to prove this fact."

Further, in *Bertelmann v. Cockett,* 24 Haw. 230 (1918) at pages 236-237, this court has said:

"A court of equity has jurisdiction to correct mistakes in a will when the mistake is apparent on the face of the will or may be made out by a due construction of its terms. But the mistake must be apparent on the face of the will, otherwise there can be no relief, for parol evidence, or evidence *dehors* the will is not admissible to contradict, vary or control the words of the will, although it is in certain cases admissible to explain the meaning of the words which the testator has used.

\*  \*  \*  \*  \*

Extrinsic evidence of intention as an independent fact is inadmissible for the purpose of filling up a total blank in a will, or of supplying a devise, or other material provision, term or qualification omitted by mistake; and that for this purpose the clearest oral declarations of intent are inadmissible. His intent must be ascertained from the meaning of the words in the instrument and from those words alone."

The trial court did not find that the contested will itself is unclear and ambiguous. We have examined the document, a certified copy is before us, and find that it is unambiguous. Therefore, consistent with the foregoing, and the plain language of our statute, we hold that the provision for the contingency of marriage must be found in the will itself. Because his will did not contain any provision which mentioned this event, the extrinsic evidence adduced in this case showing the testator's intention that he intended to marry the beneficiary at the time of the making of his will was inadmissible — it was

504

immaterial and irrelevant.

The testator's will was revoked by operation of HRS § 536-11 (1975 Supp.) for failure to comply with the statutory requirement. The orders entered by the court below are reversed.

*Meyer M. Ueoka (Douglas S. McNish* on the briefs, *Ueoka & Luna* of counsel) for Contestants, Appellants.

*Guy P. D. Archer (Langa & Kohne* of counsel) for Petitioner, Appellee.