CHARLES A. STROUSS dba C. A. STROUSS & ASSOC., Plaintiff-Appellant, *v.* DOLLY SLAUGHTER SIMMONS, ROBERT DEAN SIMMONS, U.S. BANCORP REALTY AND MORTGAGE TRUST, DANIEL P. S. FONG, HARUO FUJITOMO, DANNY FONG'S SPRECKELSVILLE HUI, a Hawaii limited partnership, JULIUS SHULMAN, INC., and ARGONAUT INSURANCE COMPANY, a foreign corporation, Defendants-Appellees, and ARGONAUT INSURANCE COMPANY, Cross-Claimant-Appellee, *v.* DOLLY SLAUGHTER SIMMONS and ROBERT D. SIMMONS, Cross-Defendants-Appellees, WOODRUM AND STAFF, LIMITED, a Hawaii corporation, EDWIN T. MURAYAMA, GIOVANNI K. L. CHUNG and ALBERT CHONG, Intervenors-Appellees

NO. 6960

(CIVIL NO. 2731)

DECEMBER 30, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MARUMOTO ASSIGNED TEMPORARILY

*Per Curiam.* This is an appeal by Charles A. Strouss, an individual doing business as C. A. Strouss & Assoc., plaintiff, from an Amended Judgment and Order of Distribution of Proceeds, which was entered by the Second Circuit Court, in a case which arose in connection with a townhouse condominium development, known as Sugar Cove, at Spreckelsville

Beach, Wailuku Commons, Maui.

Dolly Slaughter Simmons, wife of Robert Dean Simmons, undertook the development on land which she purchased from P. S. Fong and Haruo Fujitomo, general partners of Danny Fong's Spreckelsville Hui, a limited partnership. The purchase price was $455,000, with $100,000 down payment and purchase money mortgage of $355,000.

Strouss was the general contractor of the project under a cost plus fixed fee contract. He originally undertook the construction for a guaranteed maximum price of $1,145,945, which included a fee of $50,000. The guaranteed maximum price was subsequently increased to $1,194,825, including the same fee. Both the original maximum price and the amended maximum price were subject to reimbursement for costs of changes requested by the developer.

U.S. Bancorp Realty and Mortgage Trust, an Oregon business trust, which had its office in Portland, Oregon, provided interim financing for the project upon building loan agreement, promissory note, and mortgage, which were executed jointly and severally by Dolly Slaughter Simmons and Robert Dean Simmons.

In this opinion, the amended judgment from which this appeal has been taken will be referred to as the judgment; Danny Fong's Spreckelsville Hui, as Spreckelsville Hui; U.S. Bancorp Realty and Mortgage Trust, as Bancorp; Dolly Slaughter Simmons and Robert Dean Simmons, severally, as well as jointly, as Simmons; and the document executed by Strouss' project manager, entitled PRIORITY AGREEMENT, mentioned in paragraph 6, on page 5, of this opinion, and attached as Appendix A at the end of the opinion, as Appendix A.

The law firm of Carlsmith, Carlsmith, Wichman and Case, represented by James W. Boyle and Gerald A. Sumida, served as Simmons' counsel on all matters in the case which involved legal questions.

The judgment was entered under H.R.C.P. Rule 54(b), relating to judgment upon multiple claims or involving multiple parties, because the case was tried on a bifurcated basis upon the following agreement of the parties:

(a) Question of priority of mechanics' lien asserted by Strouss and the mortgage lien of Bancorp would be tried first;

(b) In case the question of priority of lien should be decided in favor of Bancorp, such decision would resolve the entire controversy; and

(c) In case the question of priority should be decided in favor of Strouss, then the trial would proceed on other issues raised in the case.

There are seven paragraphs in the judgment, but the only portions thereof which are pertinent to this appeal are the following:

(a) Paragraph 1, which reads: "Judgment is hereby entered in favor of U.S. Bancorp Realty and Mortgage Trust and against Robert Simmons and Dolly Slaughter Simmons in the sum of $1,827,023.04";

(b) Paragraph 2, which reads: "The mortgage lien of U.S. Bancorp Realty and Mortgage Trust securing the payment of $1,827,023.04 from Robert Simmons and Dolly Slaughter Simmons is prior, paramount and superior to the lien asserted by Charles A. Strouss, dba C. A. Strouss & Assoc."; and

(c) Portion of paragraph 3, which reads: "This is a Final Judgment of the claims asserted by U.S. Bancorp Realty and Mortgage Trust against . . . Charles A. Strouss, dba C. A. Strouss & Assoc., . . . against U.S. Bancorp Realty and Mortgage Trust . . . ."

The quoted portions of the judgment are based on Conclusions of Law Nos. 5 and 6, which read:

"5. The Priority Agreements dated February 4, 1974 are valid and binding contractual agreements and were duly executed and delivered by Fong Construction, Maui Concrete and Aggregate, Frank's Masonry, and Mr. Strouss, and have the legal effect of causing the lien of Bancorp's Mortgage to be a prior, paramount and superior lien to any statutory lien or liens under Chapter 507, Hawaii Revised Statutes, as amended, for labor or materials furnished to the Sugar Cove project by and in favor of Mr. Strouss, Fong Construction, Maui Concrete and Aggregate or Frank's Masonry.

"6. Mr. and Mrs. Simmons owe to Bancorp the sum of $1,827,023.04. The lien of the Bancorp Mortgage securing the repayment of the sum of $1,827,023.04 is prior, paramount and superior to the lien of Mr. Strouss."

The sum of $1,827,023.04, mentioned in the judgment consisted of the following items:

| | |
|---|---:|
| Amount disbursed to Simmons under the building loan agreement | $1,365,622.00 |
| Interest on the amount disbursed | 410,903.49 |
| Maintenance and protection of property | 23,955.99 |
| Attorneys' fees and costs | 26,541.56 |
| TOTAL | $1,827,023.04 |

The foregoing figures were established by the testimony of Richard P. Buono. Buono was an employee of Bancorp Management Advisers, Inc.

Following are the facts and chronology of events which are material to the decision of this case:

1. On November 1, 1973, Simmons and Strouss executed their construction contract.

2. On December 19, 1973, Boyle sent the following telegram to Strouss:

"US BAN TRUST HAS AGREED ISSUE A ONE MILLION SIX HUNDRED THOUSAND DOLLAR INTERIM LOAN AND THEREFORE ON BEHALF OF MRS SIMMONS WE HEREBY GIVE YOU NOTICE TO PROCEED UNDER YOUR CONSTRUCTION CONTRACT DATED NOVEMBER 1 1973"

3. Upon receipt of Boyle's telegram, Strouss proceeded to order materials for shipment to the construction site, and commenced construction sometime during the middle of January 1974, and, in any event, before February 4, 1974.

4. On January 3, 1974, Bancorp sent to Simmons a letter approving an interim construction loan of $1,600,000, to be disbursed under the terms and conditions of building loan agreement to be executed by Bancorp and Simmons.

5. On January 25, 1974, Simmons and Strouss executed the second amendment to their construction contract, which increased the guaranteed maximum cost from $1,145,945 to

$1,194,825, and added the following provision to the contract in paragraph 3 thereof:

> "*Addendum re Waivers of Lien for Financing of Construction:* It is understood that Contractor has already commenced clearing and grubbing work on the project site preliminary to commencement of construction. Contractor agrees that in connection with the construction loan for the project Contractor shall upon Owner's request immediately execute any and all waivers of lien in form as required by and satisfactory to Owner's lender and/or obtain execution of such waivers of lien from all suppliers of labor and/or materials who furnished same during the period prior to the closing of said construction loan. . . ."[1]

6. On January 29, 1974, Strouss' project manager, Roger M. Anderson, executed a document entitled PRIORITY AGREEMENT, a copy of which is appended at the end of this opinion as Appendix A.[2] The document was dated February 4, 1974, upon Sumida's instruction. It was transmitted to Simmons on January 30, 1974, for delivery to Sumida. The delivery to Sumida occurred on February 1, 1974. The document was not forwarded to Bancorp at that time, and was obtained by Bancorp's attorney later, in connection with the instant litigation.

7. On February 4, 1974, Bancorp and Simmons executed the building loan agreement, and Simmons executed the following additional documents in favor of Bancorp:

(a) Promissory note for $1,600,000;
(b) First mortgage and financing statement;
(c) Uniform Commercial Code financing statement; and
(d) Security agreement.

---

[1] The first amendment to the construction contract, which is not material to this case, was executed on November 11, 1973.

[2] Priority agreements identical with Appendix A were executed by Fong Construction, Maui Concrete and Aggregate and Frank's Masonry, but they are not material to the decision of this appeal.

The documents referred to in (b), (c), and (d) were recorded in the Bureau of Conveyances of the State of Hawaii on February 5, 1974.

The bifurcated trial in the circuit court originally proceeded solely on the question whether Strouss waived the priority of his mechanic's lien, if any, over Bancorp's mortgage lien by having his project manager execute Appendix A, and having it delivered to Sumida.

However, after the court orally ruled in favor of Bancorp on the question of priority by reason of the execution and delivery of Appendix A, Strouss raised the question of his priority on the principle of equitable estoppel.

Bancorp construed Strouss' additional contention as including a claim of priority as third-party beneficiary under the building loan agreement, and presented an argument to the court to that effect. The court agreed with Bancorp's argument, and entered Conclusion of Law No. 7, which read:

"7. The evidence herein indicates that there was no intention to create any third-party beneficiary rights or any equitable rights in favor of Mr. Strouss over and against Bancorp. This court concludes that Mr. Strouss is not entitled to an equitable priority over Bancorp for the difference between the amount of loan proceeds reserved for construction purposes and the amount actually disbursed to Mr. Strouss. Accordingly, this court deems it not necessary to have further proceedings on this issue."

As a matter of fact, Bancorp and the court misconstrued Strouss' contention.

In the circuit court, Strouss' attorney stated: "We're not talking about third-party beneficiary rights." In the opening brief filed in this court, Strouss did not state third-party beneficiary right as one of the questions for decision on appeal, and stated specifically in his reply brief: "Appellant is not relying upon the contract to create third-party beneficiary rights as repeatedly and irrelevantly argued by Bancorp."

Thus on this appeal, we have the following two questions for our consideration:

*First:* Whether Bancorp has priority over Strouss by reason of the execution and delivery of Appendix A; and

*Second:* Whether Strouss has priority over Bancorp on the principle of equitable estoppel.

On the first question, we hold that the circuit court erred in ruling in Conclusion of Law No. 5 that Appendix A had the legal effect of causing Bancorp's mortgage lien to be prior, paramount, and superior to any statutory lien under HRS Chapter 507.

Conclusion of Law No. 5 is based on Finding of Fact No. 37 that Appendix A was intended to be an implementation of paragraph 3 of the second amendment of the construction contract, relating to waivers of lien, which is quoted in paragraph 5, on pages 4 and 5 of this opinion.

There is a fallacy in Conclusion of Law No. 5. That conclusion of law does not follow from Finding of Fact No. 37.

The record in this case supports Finding of Fact No. 37 that Strouss intended Appendix A to be an implementation of paragraph 3 of the second amendment of the construction contract. Strouss' letter of January 9, 1974, to Sumida shows that Strouss intended to subordinate his mechanic's lien to Bancorp's mortgage lien.

The record also supports Finding of Fact No. 41 that Anderson had the authority to execute Appendix A on behalf of Simmons.

However, in no way did Appendix A carry out Strouss' intention.

Anderson executed Appendix A on a printed form in which Pioneer National Title Insurance Company, a California corporation, was the only named party, and there were blank spaces for:

(a) description of the lands on which the owners proposed to erect certain improvements;

(b) name of the mortgage company to which the owners applied for a mortgage loan; and

(c) principal amount of the mortgage loan.

The form contained a statement in which the general contractor, as an inducement to the mortgage company to complete the loan, and the title company to issue the policy of title insurance, agreed that the proposed mortgage:

"shall be and at all times remain prior, paramount and superior to any statutory right of lien that the undersigned may now have or hereafter acquire, whether for materials furnished or labor performed or for both thereof."

For the circuit court to arrive at Conclusion of Law No. 5, it would have been required to do the following with respect to Appendix A:

(a) Expunge the name Pioneer National Title Insurance and Trust Company, and substitute the name Title Insurance and Trust Company of Los Angeles, which provided the title insurance to Bancorp; and

(b) supply in the blank spaces provided in the form:

( i) description of the land;

( ii) name of the mortgage company; and

(iii) principal amount of the mortgage loan.

There is no principle of law which enables a court to take such action.

It is the function of courts to construe and enforce contracts made by the parties, not to make or alter them. *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 6 A.2d 357 (1939).

The foregoing discussion of the first question does not necessarily mean that the judgment is reversible.

An appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance. *Federal Electric Corp.* v. *Fasi,* 56 Haw. 57, 527 P.2d 1284 (1974); *Waianae Model Neighborhood Area Association* v. *City and County,* 55 Haw. 40, 514 P.2d 861 (1973).

In this case, the record of the hearing in the circuit court supports affirmance of the judgment under the second proviso of HRS § 507-46.

Before discussing the second proviso of HRS § 507-46, reference will be made to pertinent provisions of HRS Chapter 507, Part II Mechanic's and Materialman's Lien, contained in §§ 507-41, 507-42, and 507-46.

HRS § 507-41 defines "visible commencement of operations" as the "first actual work of improvement as a part of a continuous operation, or the first delivery to the site of materials to be used as part of a continuous operation in the improvement, of such manifest and substantial character as to notify interested persons that the real property is being

improved or is about to be improved."

Under HRS § 507-42, any person or association of persons furnishing labor or material in the improvement of real property has a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed:

(a) for the price agreed to be paid, if the price does not exceed the value of the labor and materials; or

(b) for the fair and reasonable value of all labor and materials covered by their contract, if the price exceeds the value thereof or if no price is agreed upon by the contracting parties.

HRS § 507-46 provides that the lien relates to and takes effect from the time of the visible commencement of operations for the improvement; ranks equally in priority with all other mechanic's and materialman's lien, and has priority over all other liens of any nature, except liens in favor of any branch of the government and mortgages, liens or judgments recorded or filed prior to the time of the visible commencement of operation, subject to two provisos, the first of which is not material to this case.[3]

The second proviso of HRS § 507-46 reads as follows:

". . . where a mortgage is recorded prior to the date of completion, and all or a portion of the money advanced under and secured by the mortgage is thereafter used for the purpose of paying for the improvement, the mortgagee shall be entitled, to the extent of the payments, to priority over liens of mechanics and materialmen, but no such priority shall be allowed unless the mortgage recites that the purpose of the mortgage is to secure the moneys

---

[3] The first proviso reads: "that all liens for wages for labor performed in the completion of the improvement, but not exceeding $300 for each claimant, shall have priority as a class over all other mechanics' and materialmen's liens where claims are filed by (1) the person who actually performed the labor; (2) his legal representative in the event of death or incapacity, or (3) the director of labor or industrial relations pursuant to chapter 371; . . . ."

advanced for the purpose of paying for the improvement in whole or in part. Payments made in good faith to the general contractor for such purposes shall be presumed to have been used for the purpose of paying for the improvement."

That proviso was added to the pre-existing statute by Session Laws of Hawaii 1949, Act 241, Section 5. In recommending the enactment of that statute, the Senate Committee on Judiciary stated:

"Your Committee . . . believes a provision should be made to permit the execution of a mortgage subsequent to the commencement of visible operations for the purpose of paying for the improvement to be made on the land . . . ." Senate Journal 1949, page 1206.

In this case, the mortgage from Simmons to Bancorp was recorded prior to the date of completion of the improvement; a portion of the money advanced under and secured by the mortgage (as a matter of fact a very substantial portion) was used for the purpose of paying for the improvement; and the mortgage recited that its purpose was:

"To secure payment of the indebtedness and performance of all obligations of Mortgagor under the note, this mortgage, and that certain Building Loan Agreement between Mortgagor and Mortgagee, all dated the same as this mortgage . . . ."

Those facts bring this case squarely within the second proviso of HRS § 507-46.

Proceeding to a consideration of the second question, namely, whether Strouss has priority over Bancorp, on the principle of equitable estoppel, we see no merit in such contention.

In connection with that contention, it is stated in Strouss' opening brief on this appeal:

"The gravamen of Appellant's claim for estoppel is that Appellee Bancorp induced Appellant to waive his priority with the assurance that a certain amount of money was reserved for payment to him for his work under the contract with Appellee Simmons. . . . This Court should not permit the lending institution to induce the contractor to waive his mechanic's lien priority with a reservation of

monies to the contractor, then upon failure to make said payments, permit the lending institution to assert its priority to the full amount."

Our answer to that statement is that Strouss vigorously asserted his right to mechanic's lien priority in the circuit court, and never at any time waived his claim to such priority, as shown in the following testimony:

Q. Now, in reference to that language [language of Addendum re Waivers of Lien for Financing of Construction quoted in paragraph 5, on pages 4 and 5 of this opinion], were you ever presented with a Waiver of Lien by the owner as referred to in this document?

A. No.

Q. Did you ever execute such a Waiver of Lien?

A. No.

Q. Did you ever authorize anyone either verbally or in writing to sign a Waiver of Lien as described in that paragraph?

A. No.

Q. On your behalf?

A. No.

Furthermore, Strouss never veered from his contention that he was entitled to mechanic's and materialman's lien by filing the following:

1. Complaint to Enforce Mechanic's and Materialman's Lien, on May 23, 1975;

2. Amended Complaint to Enforce Mechanic's and Materialman's Lien, on June 2, 1976;

3. Second Amended Complaint, on July 29, 1976; and

4. Third Amended Complaint, on December 16, 1977, in each of which he prayed that the court adjudge that he has a valid mechanic's and materialman's lien superior to all right, title and interest of all defendants named therein.

Strouss and Bancorp both rely on *Doherty* v. *Hartford Insurance Group,* 58 Haw. 570, 574 P.2d 132 (1978), in which this court made the following statement:

"One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable (emphasis by the court),"

and held that plaintiff's estoppel theory failed on two points: there was no misleading conduct or representation by defendant and there was no reasonable reliance thereon.

In Strouss' brief, it is stated: "In the present case, the Trial Court has found that the representative of Appellee Bancorp wrote a letter to Appellant's bonding company reserving $1,152,000 to cover construction costs." ·

That statement has reference to Finding of Fact No. 50, which reads:

"On or about January 29, 1974, Bancorp Management Advisers, Inc., wrote to Mr. Robert Carlton of Dawson and Company, Inc., regarding the commitment for a construction loan in the sum of $1,600,000.00, with $1,152,000.00 'reserved' to cover construction costs."

There is no finding by the circuit court that Strouss relied on Bancorp's letter to Carlton in going ahead with the work. Nor is there any statement in the brief filed by Strouss in this court that he relied on the Carlton letter.

Thus, Strouss' contention based on the Carlton letter fails because there is no showing of detrimental reliance required in *Doherty* v. *Hartford Insurance Group, supra.*

It is stated in Strouss' brief: "Additionally, Appellant has testified, which testimony has not been refuted, that Appellant relied on Bancorp's representation it was reserving $1,194,825.00 in going forward with his work. . . . Misleading conduct or representation is that of Appellee Bancorp in representing it would fund Appellant's contract to $1,194,825.00."

Strouss' self-serving testimony that he relied on Bancorp's representation mentioned above is immaterial. The crucial question is whether the reliance was reasonable.

Strouss has not stated when and in what manner Bancorp represented to him that it would fund his contract to the extent of $1,194,825.00.

Presumably, Strouss has references to the following items:

(a) Item showing "Construction cost: C. A. Strouss $1,194,825," in Analysis of Project Costs attached as Exhibit A to Building Loan Agreement; and

(b) Item showing "Original Contract Sum $1,194,825.00", in Application and Certificate For Pay-

ment Nos. 2 through 7.

The figure of $1,194,825 in item (a) above was furnished by Simmons to Bancorp pursuant to paragraph 8 of Bancorp's Interim Construction Financing Letter of Commitment addressed to Simmons, dated January 3, 1974, which read:

"8. Prior to initial closing, Borrower shall provide the Lender with an itemized cost breakdown, in form and amounts subject to the written approval of Lender, exclusive of land, covering the proposed improvements herein, upon which advances, based upon percentage of completion, may be predicated."

The record shows that Strouss was familiar with the contents of the commitment letter. The commitment letter provided in paragraph 3:

"3. Loan funds will be disbursed under the terms and conditions of a Building Loan Agreement which is to be executed by Lender and Borrower at time of closing, and which form and this commitment letter are to be included in the Deed of Trust by reference. The Building Loan Agreement will contain all conditions of construction."

Thus, the figure $1,194,825 was a figure provided by Simmons to Bancorp upon which advances based upon percentage of completion would be predicated, and not a representation by Bancorp to Strouss that the mentioned sum was funded.

It is also stated in Strouss' brief: "The contract between Appellant and Appellee Simmons specifically provided Appellant would not proceed without a binding commitment from a lender to disburse the contract price directly to Appellant."

As between Bancorp and Strouss, the terms of the contract between Strouss and Simmons are irrelevant. What is relevant is the applicable term of the Building Loan Agreement, which provided in paragraph 6.2:

"6.2 Subsequent Disbursements: Upon satisfaction of the conditions of paragraph 5.2 hereof, Lender shall disburse directly to Borrower or, *at Lender's option, directly to General Contractor* or such persons as have actually supplied labor, material, or services in connection with or incidental to the construction of the improvements (or for the payment of the cost of any of Borrower's undertakings hereunder, in the Note or the Mortgage) such sums as are

required for the payment of interest on the Loan, costs and expenses of construction of the Improvements and costs incidental thereto which are described in the Cost Breakdown. . . ." (Emphasis supplied)

Furthermore, the Building Loan Agreement provided in paragraph 14.3: "*No Third Party Benefits:* This agreement is made for the sole benefit of Borrower and Lender, their successors and assigns and no other person or persons shall have any rights or remedies under or by reason of this agreement nor shall Lender owe any duty whatsoever to any claimant for the labor performed or material furnished in connection with the construction of the Improvements, to apply any undisbursed portion of the Loan to the payment of any such claim or to exercise any right or power of Lender hereunder or arising from any default by Borrower."

Finally, Strouss states in his brief: "Appellant received seven (7) payments without problem, all of which showed the contract price of $1,194,825.00. For each of those Certificates of Payment, ten (10) percent retainage was held back. Appellee Bancorp takes the position that even though it didn't make the ten (10) percent payments or fund the contract to the amount agreed upon, it still has priority. This position flies in the face of the testimony of Mr. Miller that there was an agreement between Strouss and Bancorp that there was money available for payment to him for the amount of his contract."

In connection with the foregoing statement, Section 5.2 of the Building Loan Agreement mentioned in Section 6.2, quoted above, is pertinent. Section 5.2 provides in part:

"5.2 Prior to making disbursements after the Initial Disbursement, except for the last disbursement, the following conditions shall have been satisfied:

. . . . .

"5.2.2 No default shall exist under this Agreement, the Note, Mortgage or security agreement."

Also pertinent is paragraph 6.3, which reads in part:

"6.3 Final Disbursement: The Final Disbursement shall be the payment of any monies retained from progress payments or draws set forth in the Disbursement Schedule. Subject to the provisions of this Agreement, the final dis-

bursement shall be made only after Borrower has satisfied the conditions of paragraph 5.3 hereof . . . ."

Paragraph 5.3 provides:

"5.3 Prior to the last Disbursement, the conditions set forth in subparagraph 5.2 of this paragraph shall be satisfied . . . ."

The record in this case shows that there were defaults by Simmons, including failure to complete on time and failure to observe paragraph 8.7 regarding change orders, which reads:

"8.7 *Change Orders:* Not permit the performance of any work pursuant to any Change Order which will result in a change in the General Contract price in excess of the Change Order Amount unless it shall have received the specific approval of Lender to such Change Order and provided that the additional funds necessary to pay for such Change Order are deposited with Lender, or Lender is furnished satisfactory evidence of Borrower's ability to pay the additional amounts under the Change Order. Lender is hereby authorized to and shall disburse said funds in accordance with the Disbursement Schedule for payment of such Change Order upon completion of such changes to Lender's satisfaction."

Strouss' contention that he relied on Bancorp's representation it was reserving $1,194,825.00 in going forward with his work also fails because such reliance was not reasonable.

We thus conclude that the construction mortgage lien of Bancorp has priority over the mechanic's lien asserted by Strouss under the second proviso of HRS § 507-46, insofar as the sum of $1,265,622.00, the principal indebtedness devoted to construction costs under the building loan agreement. (This figure was arrived at by taking the total amount disbursed to Simmons under the building loan agreement, $1,365,622.00, less the amount disbursed to pay for the purchase price of the land, $100,000.00, an item that will be discussed in greater detail below.)

The remaining question to be decided is whether Bancorp is also entitled to priority in the payment of the other items included in the judgment:

(1) Cost of maintenance and protection    $ 23,955.99
of the property

| | |
|---|---:|
| (2) Interest on amount disbursed under the building loan agreement | 410,903.49 |
| (3) Attorneys' fees and costs | 26,541.56 |
| (4) Amount disbursed to pay for the purchase price of land | 100,000.00 |

The trial court properly included the first item, the funds disbursed by Bancorp for the maintenance and protection of the property, in the judgment entered in favor of Bancorp. Part of the sum allocated for maintenance and protection of the property, *i.e.,* $18,784.99, was expended by Bancorp pursuant to a stipulation by Strouss, Bancorp, Simmons, Spreckelsville Hui and Julius Shulman, Inc. The stipulation provided in relevant part as follows:

IT IS HEREBY STIPULATED AND AGREED that U.S. Bancorp is authorized to expend such sums as may be necessary to protect the value of the property up to and including $2,500.00 per month and in addition to pay such sums against present arrearages as may be required to induce the utility companies now providing water and electricity to the property to continue to do so.

IT IS FURTHER STIPULATED AND AGREED that all sums expended by U.S. Bancorp will have priority over all other claims against the property by any parties hereto.

Given the clear language of the stipulation, to which he was a party, Strouss cannot dispute Bancorp's priority over all other claims to the amounts expended under the stipulation.

The remaining amount allocated for maintenance and protection of the property, *i.e.,* $5,171.00, was expended prior to the stipulation, but pursuant to Bancorp's mortgage and building loan agreement. This payment is entitled to the same priority as the payment made under the stipulation. The property would have apparently been in danger of immediate deterioration if the above amounts had not been expended. By providing for the upkeep of the property, the allocated monies extended the useful life of the property and thus contributed to the property's improvement in the broad sense of the word. The entire sum of $23,955.99 disbursed by Bancorp for maintenance and protection of the property constitutes monies "used for the purpose of paying for the improvement" of the prop-

erty, as required under the second proviso of HRS § 507-46. Bancorp thus has priority to the amounts disbursed for the maintenance and protection of the property.

In contrast to the funds disbursed for the maintenance and protection of the property, the next item claimed by Bancorp, for the interest on the amounts disbursed under the building loan agreement, does not fall within the specific language of the second proviso of HRS § 507-46. The $410,903.49 amount in interest represents the sum of the interest on the principal amount due on the construction loan, $380,814.30, plus the interest on the amount disbursed by Bancorp as a partial payment for the purchase price of the land, $30,089.19.

We have previously defined interest as "a payment made for the privilege of using another's money" which "arises not from the sale of any commodity, but rather as a charge for the use of money loaned." *Hawaiian Beaches v. Kondo,* 52 Haw. 279, 281, 474 P.2d 538, 540 (1970). Interest is a payment by the borrower to the lender for the use of the lender's money. Interest does not constitute "money advanced under and secured by the mortgage [which] is thereafter used for the purpose of paying for the improvement" of the property as specified in HRS § 507-46. Bancorp therefore has no priority in payment of interest because the construction mortgage lien is only entitled to priority under HRS § 507-46 "to the extent of the payments" for improvements.

The literal construction of the statute is in keeping with the purpose of the mechanic's lien statutory scheme which is "to properly protect Mechanics and Materialmen who have furnished both time and material for others." Rep. No. 69 of the Judiciary Committee, Legislative Assembly, 1888 Session. *See Hawaii Carpenters' Trust Funds v. Aloe Development Corp.,* 63 Haw. 566, 571, 633 P.2d 1106, 1109 (1981). In *Amii v. Adams,* 40 Haw. 325, 329 (1953), we noted that

It is already well settled in this jurisdiction, however, that "the remedial portions of mechanic's lien statutes should be liberally construed" and that "the duty of the courts is to see that those whom the law intended to protect shall enjoy the advantages which it confers." (*Lewers & Cooke, Ltd. v. Wong Wong,* 22 Haw. 765, 768.)

*Accord, Hawaii Carpenters' Trust Funds v. Aloe Development*

*Corp.,* 63 Haw. at 572-73, 633 P.2d at 1110.

The priority of the construction mortgage securing a loan for the purpose of paying for improvements to the development is an exception to the priority which the mechanic's lien would otherwise ordinarily enjoy under the remedial portion of the mechanic's lien statutes. Thus the term "improvement" in connection with the construction mortgage lien's priority must be strictly construed to protect the mechanics and materialmen whose supplies and labor make the construction project possible.

If Bancorp's construction mortgage is allowed priority in the amount of the interest claimed, Bancorp would recover virtually the entire amount of its investment and the entire amount of the profit in the form of interest it would have realized if the construction project had not been in default. Strouss, on the other hand, who would otherwise be entitled to a mechanic's lien, would only recover up to $1,053,797.00, despite the fact that he was guaranteed a maximum contract payment of $1,194,825.00 plus a $50,000.00 fee. Such a situation would be contrary to the stated legislative purpose of protecting mechanics and materialmen.

If the legislature had intended such a result, it would have explicitly included interest payments in the language of the second proviso of HRS § 507-46. It did not choose to do so, however. It is an elementary principle of statutory construction that "where the language of the law in question is plain and unambiguous, construction by this court is inappropriate and our duty is only to give effect to the law according to its plain and obvious meaning." *In re Hawaiian Telephone Company,* 61 Haw. 572, 577-78, 608 P.2d 383, 387 (1980). *See also, In re Estate of Spencer,* 60 Haw. 497, 499, 591 P.2d 611, 613 (1979); *In re Palk,* 56 Haw. 492, 497, 542 P.2d 361, 364 (1975). Thus we are forced to conclude that under the plain, clear, and unambiguous language of the second proviso of HRS § 507-46 as it presently exists, Bancorp's construction mortgage lien is not entitled to priority over Strouss' mechanic's lien in the payment of the interest claim by Bancorp. We therefore hold that the trial court erred in including interest payments in its judgment in favor of Bancorp.

The remaining items allowed by the trial court also do not

fall within the language of the second proviso of HRS § 507-46. Nevertheless, we find that Bancorp is entitled to payment of these items for the reasons discussed hereinafter.

The sum of $26,541.56 for attorneys' fees and costs was incurred by Bancorp in enforcing and protecting its rights in the course of the instant litigation. Bancorp is entitled to payment of this item pursuant to the construction loan mortgage which states in relevant part that

> In the event suit or action is instituted to enforce any of the terms of this mortgage, mortgagee shall be entitled to recover from mortgagor such sums as the court may adjudge reasonable attorneys' fees at trial and on any appeal. All reasonable expenses incurred by mortgagee that are necessary at any time in mortgagee's opinion for the protection of its interest or the enforcement of its rights . . . shall become a part of the Indebtedness payable . . . .

The amount of attorneys' fees claimed by Bancorp does not exceed the 25% maximum allowed under HRS § 607-17 (1976) which provides for an award for reasonable attorneys' fees to a successful party in an action for such fees on a promissory note or other written contract. Upon examination of the attorneys' fees claimed, we cannot conclude that the trial court abused its discretion in awarding attorneys' fees to Bancorp. *See Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 244, 413 P.2d 242, 245 (1966); *Smothers v. Renander,* 2 Haw. App. 400, 408-09, 633 P.2d 556, 563 (1981); *Powers v. Shaw,* 1 Haw. App. 374, 377, 619 P.2d 1098, 1101 (1980).

Bancorp was also entitled to payment of the last item, the amount disbursed by Bancorp for payment of the first installment due on the purchase money mortgage for the land underlying the development project. The purchase money mortgage, originally held by the Spreckelsville Hui, was recorded long before commencement of construction and was prior to all other liens on the property including the mechanic's lien asserted by Strouss. The Spreckelsville Hui entered into an enforceable agreement with Bancorp to subordinate its purchase money mortgage to Bancorp's construction mortgage. In effect, by virtue of the subordination agreement, Bancorp stands in the shoes of the Spreckelsville Hui as the prior lienor. G. Osborne, Handbook on the Law of Mortgages § 281 (2d ed.

1970). *See also, Kapena v. Keleleonalani,* 6 Haw. 579 (1885). Bancorp is thus entitled to priority in the payment of the $100,000 disbursed for partial payment of the purchase money mortgage by right of subrogation.

We accordingly affirm the judgment entered in favor of Bancorp against Simmons as to all of the items included in the judgment, except for the interest on the funds disbursed by Bancorp in the amount of $410,903.49 which is disallowed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*Richard L. Rost (Richard L. Rost,* Attorney at Law, a Law Corporation, of counsel) for plaintiff-appellant.

*Robert A. Rowan and William M. Swope (Cades Schutte Fleming & Wright* of counsel) for defendant-appellee U.S. Bancorp Realty and Mortgage Trust.

*James W. Boyle and Gerald A. Sumida (Carlsmith, Carlsmith, Wichman & Case)* for defendants-appellees Dolly Slaughter Simmons and Robert Dean Simmons.

*Walter T. Shimoda* for defendants-appellees Daniel P. S. Fong, Haruo Fujitomo and Danny Fong's Spreckelsville Hui.

*Tamotsu Tanaka (Tamotsu Tanaka,* Attorney at Law, a Law Corporation, of counsel) for intervenors-appellees Edwin T. Murayama, Giovanni K. L. Chung and Albert Chong.

*John Jubinsky (Ashford & Wriston* of counsel) for intervenor-appellee Woodrum and Staff Limited.

## APPENDIX "A"

### PRIORITY AGREEMENT

ORDER NO. ⸏⸏⸏⸏⸏

WHEREAS, the owners of the following described lands in ⸏⸏⸏⸏⸏ County, State of Washington, to-wit:

propose to erect thereon certain improvements and for the purpose of raising necessary funds have applied to

hereinafter called the Mortgage Company, for a mortgage loan in the principal sum of

Dollars,

to be secured by a first mortgage of said described premises, and WHEREAS, the Mortgage Company has applied to Pioneer National Title Insurance Company, a

California Corporation, hereinafter called the Title Company, for a policy of title insurance insuring the priority of lien of the said mortgage.

And WHEREAS, the undersigned has been employed to furnish materials or to perform labor or both thereof incident to the said improvements, for which the undersigned may have a statutory right of lien, and WHEREAS, the undersigned is desirous of the said mortgage loan being consummated.

NOW THEREFORE, in consideration of the premises and as an inducement to the Mortgage Company and to the Title Company to complete the said mortgage loan and to issue the said policy of title insurance, respectively, the undersigned does hereby agree that the lien of the proposed mortgage shall be and at all times remain prior, paramount and superior to any statutory right of lien that the undersigned may now have or hereafter acquire, whether for materials furnished or labor performed or for both thereof.

The Mortgage Company shall not be liable for any application of the proceeds of the said mortgage loan other than to pay the same to the order of the owners of said described premises. The Mortgage Company shall have the right at any time within four (4) months after the completion of the said improvements to make or procure to be made a new mortgage loan in a like sum, the proceeds thereof to be applied in satisfaction and discharge of the said mortgage, or to increase the amount of the said loan in any amount, provided only the net balance of proceeds of such increased mortgage loan after payment of the usual commissions and expenses and after full payment and discharge of the said prior mortgage loan shall be applied by the Mortgage Company in payment or in partial payment of any bill for materials or labor incurred in the construction of the said improvements, and any such new mortgage shall have the same priority as the original mortgage herein referred to.

Dated this 4th day of February 1974

L 24 - 11/64                                  (over)

### IMPORTANT NOTICE
If this agreement is executed in the name of a corporation, signature of authorized officers, such as president and secretary or vice-president and secretary is required. If in the name of a partnership, signature of at least one of partners is required.

General Contractor  C. A. Strouss & Assoc.  By Roger M. Anderson  Title Proj. Mgr.

Architect _____ By _____ Title _____

Surveyor _____ By _____ Title _____

Excavation _____ By _____ Title _____

Lumber _____ By _____ Title _____

Concrete _____ By _____ Title _____

### DISSENTING OPINION OF MARUMOTO, J.

I dissent from that portion of the opinion of the court disallowing interest which was awarded by the circuit court to Bancorp.

According to that opinion, Bancorp has priority over Strouss only with respect to principal, but not with respect to interest, because the second proviso of HRS § 507-46 gives priority only to money advanced under and secured by the mortgage, and interest is not money advanced and secured by the mortgage.

I think that, in the context of that proviso, such interpretation is too narrow and unrealistic.

In that connection, I recall a statement by Mr. Justice Oliver Wendell Holmes that, in giving realistic effect to a statute, it is sometimes necessary to allow a little play in the knee.

In *Electrical Equipment Co.* v. *Security National Bank,* 606 F.2d 1357 (C.A.D.C. 1979), at page 1362, it is stated that "Interest, after all, is not a windfall but a charge representing the time-use value of money", and notes with approval the following statement in 1 Glenn on Mortgages § 90 (1943):

> Lawful interest is part of the bargain that was struck when the loan was made; and it follows that the mortgage secures interest installments as well as principal.

In this case Strouss obtained its technical priority by jumping the gun to the extent of $143,539, for which he was paid on Application for Payment No. 1. The effect of the opinion of the court is to enable Strouss to have free use of the money with which he purchased materials and paid for labor.

Such result can have detrimental effect on the construction industry by discouraging financial institutions to provide construction loans.